THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RALPH B. KELLY, Defendant-Appellant.

(No. 12274;

Fourth District—September 19, 1974.

John F. McNichols and Daniel D. Yuhas, both of State Appellate Defender's Office, of Springfield, for appellant.

George P. Wittman, State's Attorney, of Jerseyville (Michael Prall, of Circuit Attorney Project, of counsel), for the People.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

Defendant, Ralph B. Kelly, appeals from judgments entered on jury verdicts finding him guilty of two counts of armed robbery and from concurrent sentences imposed of 20 to 50 years imprisonment on each count.

Defendant raises the following issues for resolution by this court:

(1) Whether the trial court erroneously admitted the in-court identification of defendant by Mrs. Brands and Mrs. Maurer,

(2) Whether Officer Watson's reference to the attache case seized from defendant as a "housebreaking kit" amounted to reversible error,

(3) Whether certain closing prosecutorial statements amounted to reversible error and

(4) Whether defendant's sentences were excessive.

At the trial Frank Maurer, the operator of the River Road Antique Shop in Grafton, Illinois, testified that on October 27, 1972, he and his wife, Gretchen, were closing their business when two individuals entered the establishment followed shortly thereafter by the defendant. Maurer stated that he recognized all three since they had been in the antique shop the day before. He stated that defendant pulled a revolver, pointed it at him stating that this was a hold-up, bound their hands with tape, and forced them to lie on the floor in a back storeroom. Maurer further testified that he observed defendant for approximately 5 to 10 minutes under good lighting conditions. that he had a good look at defendant, and that defendant was the same individual who had pointed a gun at him on the night in question.

Edith Brands, an acquaintance of Mrs. Maurer, testified that while the robbery was in progress she arrived at the shop to pick up Mrs. Maurer so that they could go to a local grade school function. She stated that she entered the front door and was told by a woman subject to proceed to the rear where she was informed that the Maurers were in the storeroom. She stated that once inside the storeroom defendant pointed a gun at her telling her to cooperate and she would not get hurt. Defendant then took a diamond ring from her, bound and gagged her, and forced her to lie on the floor. She identified defendant as the individual in question stating that she observed him for approximately 1 to 1½ minutes under good lighting conditions.

Gretchen Maurer verified her husband's testimony of the events on the evening in question and likewise identified defendant as the individual who had pointed the gun at her and who had bound her. She stated that she saw defendant for at least 3 to 4 minutes under good

lighting conditions and that she viewed him close up for the entire period of time that he was taping her.

After the three robbers left the shop, the Maurers freed themselves and called the local authorities. Larry Newingham, a Grafton police officer, testified that upon arriving at the shop he was told by Mrs. Brands that she thought the robbers were in a dark green station wagon headed east toward Alton, Illinois. He stated that he proceeded to alert the Alton police. Gray Fleming, an Alton police officer, testified that on the evening in question he observed a dark-green-colored station wagon matching the description relayed to him containing three individuals also matching the descriptions of the suspects in question. He further stated that after attempting to elude the police, the car was finally forced to stop. Officer Logan testified that he apprehended the defendant who was the driver of the vehicle in question. Officer Watson testified that a search of the car turned up three boxes of assorted antiques, two pistols, and an attache case containing rolls of tape, a Phillips-head screwdriver, and other items. Officer Watson stated that the latter is commonly referred to as a "house-breaking" kit. Officer Conner testified that he searched defendant after he was taken to the Alton Police Department and found a diamond ring in his right hand jacket pocket.

The jury subsequently returned a verdict finding defendant guilty of both counts of armed robbery. A hearing in aggravation and mitigation was conducted on February 22, 1973, after which defendant received the concurrent 20 to 50 year sentences.

Defendant first contends that the trial court erroneously admitted the in-court identification of defendant by Mrs. Brands and Mrs. Maurer. We note that on the evening of his apprehension the defendant was subjected to a lineup at which he was identified by Mrs. Brands and Mrs. Maurer. Prior to trial defendant filed a motion to suppress the lineup identifications, and a hearing was held in that regard. On January 30, 1973, the court suppressed the lineup evidence on the grounds that defendant was denied his right to counsel at the lineup after making a demand therefor. Prior to the testimony of Mrs. Brands, defense counsel moved that she not be allowed to give identification testimony citing the suppression of her out-of-court identification of defendant. Arguments were proffered to the court, and the court ruled that Mrs. Brands would only be allowed to make an in-court identification if the State could establish that she was not relying upon the lineup to support her identification. She then proceeded to testify as to her observations of defendant outside the presence of the jury. The trial judge then specifically inquired whether she could identify the individual who robbed her if she had not seen him in the lineup. She replied affirmatively. The trial

court then specifically found that any in-court identification by Mrs. Brands would not be predicated upon the lineup identification, and that she would be permitted to identify defendant in the presence of the jury. Defense counsel made a similar objection prior to the testimony of Mrs. Maurer. After a hearing on the motion and after testimony by Mrs. Maurer outside the presence of the jury, the court also concluded that her identification of defendant would not be based upon her lineup identification, and that she would be permitted to identify defendant in the presence of the jury. We find the procedures used by the trial court here to be clearly proper, and we see absolutely no merit in defendant's argument.

It is well established that the State may use in-court identification if it can establish that the in-court identification is independent of any type of tainted out-of-court confrontation. (*United States v. Wade*, 388 U.S. 218 (1967).) Even assuming then that the lineup identification here was properly suppressed, the record demonstrates that the in-court identification of defendant by Mrs. Brands and Mrs. Maurer had origins independent of the line-up confrontation, and the trial court was correct in so finding. Mrs. Brands stated that she observed defendant close-up and under good lighting conditions for approximately 1 to 1½ minutes. Mrs. Maurer stated that she observed defendant for 3 to 4 minutes under good lighting conditions, and that she viewed him close up for the entire period of time he was taping her. Both women heard the defendant speak, described his clothing in great detail, and impressed upon the court that their knowledge of details were due to the frightening nature of their confrontation. It clearly cannot be said then that the trial court's finding of independent origin was erroneous.

Defendant next contends that Officer Watson's reference to the attache case seized from defendant as a "housebreaking kit" denied defendant a fair trial and amounted to reversible error. We note that defense counsel made no objection to the witness' reference in question nor was the alleged error included in defendant's post trial motion. An examination of the record further reveals that Watson volunteered his characterization of the kit, was asked no further questions in that regard by the state, and it was the defense counsel who decided to question further in this regard, thus carrying it beyond all necessary limits. Nevertheless, the trial judge sua sponte instructed the jury to disregard any reference to the attache case as a housebreaking kit. This limiting instruction and the overwhelming evidence of guilt clearly indicates that any error in this regard is harmless beyond a reasonable doubt.

The defendant next contends that the following prosecutorial closing remarks amounted to reversible error:

"I'm just going to state what sort of recapitulates goes over what you've heard here the last few days, and I think after I go over these statements that were made on the witness stand and uncontradicted statements of the witnesses that you will find defendant guilty of armed robbery."

Defendant argues that these comments are actually comments upon defendant's failure to testify in his own behalf. Even assuming that defendant's characterization of these comments as a reference to defendant's failure to testify is correct, we further note that defense counsel failed to object to these comments. In *People v. Skorusa*, 55 Ill.2d 577, 304 N.E.2d 630, our supreme court held that an objection on appeal to an allegedly improper comment during closing argument regarding a defendant's failure to testify is waived by failure to make timely objection. Such is the case here.

■■ Defendant finally contends that the concurrent sentences of 20 to 50 years imposed upon him for the two counts of armed robbery are excessive. We agree and chose to follow this court's opinion in *People v. Dandridge*, 9 Ill.App.3d 174, 292 N.E.2d 51. Accordingly, the minimum concurrent sentences here are reduced from 20 to 10 years, but the maximum concurrent sentences imposed by the trial court are affirmed.

Accordingly, for the reasons stated above the judgments of the circuit court of Jersey County are hereby affirmed, the sentences modified, and the cause is remanded to the circuit court with directions to issue an amended *mittimus*.

Sentences modified, judgments affirmed as modified.

SMITH, P. J., and CRAVEN, J., concur.