THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GEORGE R. W. JAMES, Defendant-Appellant.

(No. 12367;

Fourth District—November 27, 1974.

John F. McNichols and John L. Swartz, both of State Appellate Defender's Office, of Springfield, for appellant.

Richard J. Doyle, State's Attorney, of Danville (John R. McClory, of counsel), for the People.

Mr. PRESIDING JUSTICE SMITH delivered the opinion of the court:

The defendant appeals from a conviction of burglary of a school building and his sentence by the circuit court of Vermilion County to

the penitentiary for 5 to 15 years. Two issues are raised in this court. They are: (1) does the evidence establish the guilt of the defendant beyond a reasonable doubt, and (2) did evidence of previous entries of this school building stricken by the court so prejudice the defendant that a new trial is warranted? We answer the first question "yes" and the second question "no."

The chronology of events are briefly as follows. Officer Wilson testified that about 4:30 A.M. on November 17, he was on patrol and noticed a broken window in the boiler room of the Pine Crest School in Georgetown. He entered the building and heard glass breaking at the other end of the school. He found a window broken into a classroom and then heard glass breaking and found a window broken to the outside. He returned to the school later with the chief of police. Their testimony is practically the same. They observed footprints in the mud below the broken window, and followed the footprints through the mud across the grass. These footprints were clearly visible because there had been frost that morning and the grass clearly showed where someone had stepped. They followed the tracks to a gate and fence where there was mud on the gate slats, then proceeded across some gravel and into high grass some 150 yards to a couple of farm buildings. Along the route they observed slices of bread and crumbs. They followed a straight path to the barns and found a slice of bread along the side of one. They heard snoring. They observed a stack of hay bales in one of the buildings and the snoring appeared to come from there. Officer Wilson ripped off two boards from the side of the barn to gain access and the snoring stopped. They removed some corrugated tin from the stack of bales and the defendant's head popped up. He was advised that he was under arrest for the burglary of the Pine Crest School and they advised him of his rights. The police chief testified that he told Wilson to put handcuffs on the defendant and to be careful because the defendant "probably had guns with him." Objection to this statement was made and the court sustained the objection and stated that he would advise the jury to disregard the witness' remarks. No such instruction appears in the record. The officers found a shotgun, a rifle, a case of chocolate milk, a box of Velveeta cheese, a plastic bag with some cookies, two blankets and a pillow. The defendant stated to Officer Wilson something to the effect that "You're lucky, baby face. One step closer *earlier* this morning and you'd have been a dead mother  *  *  *." Emphasis supplied.

The school superintendent testified that he arrived at the school about 5 A.M. after being advised of a break-in, found the broken windows, that some foodstuff was missing, namely, milk, that an attempt had been made to remove a merchandising machine from the wall in the girls'

washroom, and stated that blankets which had been kept in the nurse's room had been missing on the preceding day. On cross-examination, it developed that the superintendent could not truthfully testify that he had any personal knowledge of presence of milk, blankets or anything of that type in the building, and that he had last been in the building on the morning of the day before, after a prior break-in. On motion his testimony was ordered stricken and the jury instructed to disregard it.

■■ It is thus clear that the defendant's connection with this crime must rest entirely on circumstantial evidence and the statement he made to the police officer. There is no direct evidence that he was ever in the building or that any of the property he had with him was ever present in the school building. This being true, the defendant argues that there is nothing in this record to connect him with the crime. In so doing, he overlooks circumstantial evidence from which a jury could reasonably conclude that it was he who entered the building. He urges that the evidence fails to establish a commission of burglary because it failed to show that even if an entry had been made by the defendant, it does not show that he did so with the intent to commit a theft. Counsel for the defense however concedes that *People v. Johnson,* 28 Ill.2d 441, 192 N.E.2d 862, states the correct rule as to the question of intent. It is there stated at page 443: "Intent must ordinarily be proved circumstantially, by inferences drawn from conduct appraised in its factual environment. We are of the opinion that in the absence of inconsistent circumstances, proof of unlawful breaking and entry into a building which contains personal property that could be the subject of larceny gives rise to an inference that will sustain a conviction of burglary. Like other inferences, this one is grounded in human experience, which justifies the assumption that the unlawful entry was not purposeless, and, in the absence of other proof, indicates theft as the most likely purpose. This conclusion is supported by the decisions of other courts. [Citations.]" This case and the case of *People v. Morris,* 7 Ill.App.3d 1055, 289 N.E.2d 73, are conclusive of the issue of intent.

■■ The records indicate that the police officer saw a broken window in the school building, entered the building and heard some glass breaking, found an outside window broken, found mud on the window sill, and found tracks in the mud and grass marked by a trail of bread and crumbs leading inexorably towards one of the barns. There they found the defendant with a case of chocolate milk, cheese, and bread. While there is no direct proof that the property came from the school building, jurors do not lose their God-given senses when they sit as jurors and it is not unreasonable for the jury or this court to conclude that it is at least unusual for one found under the circumstances of this defendant to have

a case of chocolate milk, nor is it unreasonable to conclude that these are items frequently and normally found in and about a school building or school cafeteria. The defendant provided the key to his own guilt when he stated to the police officer, "You're luck, baby face. One step closer earlier this morning and you'd have been a dead mother * * *." Corroborated by the chief of police, this police officer ties this defendant to the school building and as the one that was in the school building that morning when he voluntarily stated "* * * One step closer *earlier this morning and you'd have been a dead mother * * **." (Emphasis supplied.) This statement puts a rather high polish on the circumstantial evidence leading this defendant from the inside of the school building to the barn. While we cannot understand why the blankets and the pillow were not properly identified by the State as school property as would seem to be readily possible, that evidence was not before the jury nor do we consider it in our determination of the innocence or guilt of this defendant.

█ █ It is likewise urged that the reference to prior break-ins was highly prejudicial as well as the admission of the firearms and the foodstuff. It is of course fundamental that evidence of other crimes is not competent to prove the charge in an unrelated indictment and is ordinarily not admissible. In the intant case, it is clear from this record that the fact of a prior break-in was contained in the school superintendent's statement and it was neither charged, argued or asserted that the defendant was in any way connected with it, but was offered in connection with the testimony of the superintendent to show knowledge of a previous condition of the building. His entire testimony was ordered stricken by the trial judge and the jury instructed to disregard it. The reference to the firearms in the testimony was made to correctly indicate the physical and material things surrounding the defendant at the time he was discovered and certainly had no direct bearing on his innocence or guilt of this particular burglary. The defendant however probably made them admissible by his own statement to the police officer about "being a dead mother * * * *" and his capacity to carry out that threat. None of these physical elements were offered into evidence to establish a separate and distinct crime, but were elements from which the jury might draw reasonable conclusions that it was this defendant who had committed the burglary which he is here charged. Circumstantial evidence is good evidence and unless there are circumstances contradicting the reasonable inferences and conclusions drawn by the jury from such circumstantial evidence, their determination should not and cannot be disturbed. We do not have a situation here such as appeared in *People v. Soznowski,* 22 Ill.2d 540, 177 N.E.2d 146, where the supreme court concluded that a beating of a

sleeping woman until she awakened did not completely negate any intention to commit larceny, but it at least created a reasonable doubt as to the presence of such an intent. The beating was disturbing to the trial court in that case and to the supreme court as inconsistent with an intent to steal, and a conviction finding him guilty of burglary with the intent to commit a theft was reversed. There is not a single item of evidence in this case that mitigates against the conclusion of the jury that it was this defendant who entered this school building and the defendant by his own lips when he stated in substance that had the officer come any closer *earlier* that morning he would have been a "dead mother  *  *  *." This statement came after he knew he was accused of the burglary and after he had been advised of his rights.

We have carefully considered the question of prejudice to the defendant from the superintendent's statement and conclude that the defendant had a fair trial and was convicted beyond a reasonable doubt—any doubt being clearly resolved by the undenied testimony from his own lips.

The judgment of the trial court is affirmed.

Affirmed.

CRAVEN and CLYDESDALE, JJ., concur.