THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
LARRY E. GUHLSTORF, Defendant-Appellant.

Fourth District   No. 14377

Opinion filed January 13, 1978.

Richard J. Wilson, of State Appellate Defender's Office, of Springfield, for appellant.

Ronald C. Dozier, State's Attorney, of Bloomington (Robert C. Perry and Jeffrey B. Levens, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE REARDON delivered the opinion of the court:

Following a bench trial before the Circuit Court of the Eleventh Judicial Circuit, McLean County, the defendant was convicted for the offense of possessing less than 30 grams of heroin, a violation of sections 204 and 402 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1975, ch. 56½, pars. 1204, 1402). Defendant was sentenced to 2½ to 10 years' imprisonment.

On appeal, defendant contends (1) that the heroin which he possessed was inadmissible fruit or product of an unlawful arrest; (2) that the heroin was the inadmissible fruit of an unlawful investigative stop; and (3) that the court abused its discretion in failing to consider elective treatment for drug addiction as a sentence alternative pursuant to section 10 of the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1975, ch. 91½, par 102.10). In addition, defendant has filed in this court a motion to strike those portions of the State's brief and argument which he contends are based on materials not introduced into evidence in the trial court. We have considered this motion in the course of our deliberations on the merits of the case.

The facts pertinent to this appeal involve seizures of defendant's person and of a brown plastic medicine bottle which defendant threw onto the roof of his home at approximately 3:15 p.m. on February 28, 1976. The seizures were accomplished by officers or agents of the Bloomington Police Department and the Illinois Bureau of Investigation (hereinafter referred to as the I.B.I.).

At approximately 2:50 p.m. on the day in question, two undercover agents purchased a quantity of heroin from an individual who had recently departed from the defendant's home. Upon orders from the McLean County State's Attorney's office, a uniformed Bloomington police officer, Curt Raydon, and I.B.I. Agent John Gulley maintained constant surveillance of the defendant's home from an automobile near the residence. At approximately 3:10 p.m., the defendant exited from his home and entered an automobile parked in his driveway. Before he could leave, however, Raydon and Gulley pulled into the driveway in their automobile, effectively blocking defendant's path. The defendant then slipped out of his automobile and, apparently calmly, walked back toward the house. The record does not disclose whether the officers said anything at that time, but it does reflect that Officer Raydon walked over to the defendant and grabbed his arm. The defendant then began to struggle with Raydon and he took a small medicine bottle containing a tin foil pouch of heroin out of his pocket, tossing the bottle onto the roof of his home. Within minutes, one of the officers retrieved the bottle from the roof. Although the officers did not have a search warrant at the time, they had been instructed to not let anyone leave the residence.

The defendant filed a motion to suppress the bottle removed from the roof because, he alleged, the police lacked a warrant and were without probable cause to detain or arrest him.

When resolving the constitutionality of police searches and seizures, courts must concern themselves with fine analytical distinctions involving the interplay of what are often very close factual situations and the law. In *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, an

experienced officer observed three parties acting in a manner which led him to believe that they were planning an imminent robbery. The officer thereupon: (1) confronted the suspects and inquired as to their activities; (2) after receiving unsatisfactory responses, he proceeded to pat down the suspects' outer clothing; (3) he then felt an object in Terry's pocket which he thought was a weapon; (4) he at least constructively arrested Terry on probable cause to believe he was carrying a concealed weapon; and (5) he carried out a search incident to that arrest by reaching into the pocket and removing a pistol. As a result of this step-by-step analysis of events, the court concluded that the ultimate arrest and incidental search were reasonable and constitutionally permissible. In reversing a conviction in *Sibron v. New York* (1968), 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889, the Supreme Court of the United States found that an officer confronted a suspect whom he observed speaking with known narcotic addicts, but instead of employing the intermediate step of patting the suspect, the officer thrust his hand into the suspect's pocket and removed several glassine envelopes containing heroin. In *Peters v. New York* (1968), 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889, an off-duty officer observed two suspects through the peephole in his apartment door. The suspect's actions suggested to the officer that they were preparing to engage in a burglary. The officer loudly entered the hallway, causing the suspects to flee. When apprehended by the officer, a pat down of Peters' pocket disclosed a set of burglar's tools which the officer took from the suspect. Although, as in *Sibron*, the officer's action could not be dismissed as frisking, the Court found *Sibron* and *Terry* to be distinguishable because at the moment of confrontation, the officer had probable cause to arrest, and the search was incident to that arrest.

We note that the critical element in *Terry, Sibron* and *Peters,* was the nature of the initial confrontation between the parties. In Illinois, section 107—2 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 107—2) provides that a peace officer may arrest a person when he has an arrest warrant, has reasonable grounds to believe that an arrest warrant has been issued, or had reasonable grounds to believe that the person is committing or has committed an offense. (*People v. Wolf* (1975), 60 Ill. 2d 230, 326 N.E.2d 766.) Section 107—5 of the Code (Ill. Rev. Stat. 1975, ch. 38, par. 107—5) provides that an arrest is made by an actual restraint of a person or by that person's submission to custody.

In *People v. Wipfler* (1977), 68 Ill. 2d 158, 368 N.E.2d 870, our supreme court upheld a youthful defendant's two burglary convictions even though the defendant alleged that the police arrested him without probable cause. In *Wipfler,* the defendant voluntarily spoke with the local police chief, a man who had been a sort of surrogate father since the death of defendant's own father. Later, the defendant was questioned by

two detectives in a closed room. Both the defendant and the State conceded that there was no probable cause to arrest the defendant until he admitted to the detectives that he had more than mere knowledge of the burglaries. The *Wipfler* court stated:

"Both the Federal courts and the appellate courts of this State have held that the intent of the officer and the understanding of the arrestee are two essential elements in the definition of arrest. (*Moran v. United States* (10th Cir. 1968), 404 F.2d 663; *Hicks v. United States* (D.C. Cir. 1967), 382 F.2d 158; *Fisher v. United States* (8th Cir. 1963), 324 F.2d 775; *People v. Ussery* (1974), 24 Ill. App. 3d 864; *People v. Smith* (1971), 5 Ill. App. 3d 341; *People v. Bridges* (1970), 123 Ill. App. 2d 58; *People v. Jackson* (1968), 98 Ill. App. 2d 238; *People v. Mirbelle* (1934) 276 Ill. App. 533.) For a discussion of the relevance of the state of mind of the parties in determining whether an arrest has occurred, see Cook, *Subjective Attitudes of Arrestee and Arrestor as Affecting Occurrence of Arrest,* 19 U. Kan. L. Rev. 173 (1971).) It is also clear, however, that the component of an arrest which courts have labeled the arrestee's understanding is not identical to the arrestee's subjective beliefs at the time of arrest. The accepted test of understanding is not what the arrestee thought, but 'what a reasonable man, innocent of any crime, would have thought had he been in the defendant's shoes.' (*Hicks v. United States* (D.C. Cir. 1967), 382 F.2d 158, 161; see also *People v. Howlett* (1971), 1 Ill. App. 3d 906.) Naturally, the beliefs of the individual arrestee, to the extent that they can actually be ascertained, are legitimate considerations. (*Hicks v. United States* (D.C. Cir. 1967), 382 F.2d 158, 161.) When, however, the apprehension engendered in an arrestee, even if such apprehension can be said to be reasonably held by the particular arrestee, does not coincide with what the reasonable, *innocent* man would have thought, then assessments of whether an arrest occurred must be guided by the reasonable man standard and not by the subjective belief of the arrestee. See *Coates v. United States* (D.C. Cir. 1969), 413 F.2d 371.

\* \* \*

In summary, then, there is ample evidence to sustain the finding of the trial court that no arrest occurred when defendant entered the interrogation room. What actually took place here was no more than what was minimally necessary for the police to successfully investigate a crime, as is their duty. They were informed that a certain individual might have some knowledge about two burglaries. They asked this individual to come to the station so that they could question him about the burglaries. To hold that this

amounted to an arrest would be to hold that virtually any station-house interrogation is necessarily so custodial as to indicate that the person questioned has been placed under arrest. This would mean that the police could not request the presence of anyone, even for noncustodial questioning, unless and until they had probable cause to arrest the person to be questioned. We see no reason to so restrict the investigatory function of the police." 68 Ill. 2d 158, 165-68, 368 N.E.2d 870, 872-73.

■■ In the instant case, it is clear that Officer Raydon did not attempt a *Terry* pat down of the defendant. Such a pat down is a limited investigative search which is primarily intended to protect the officer from attack by the suspect. (392 U.S. 1, 23-24, 20 L. Ed. 2d 889, 907-08, 88 S. Ct. 1868.) Here, however, Raydon and Gulley were previously instructed to arrest anyone leaving defendant's house. At the hearing on defendant's motion to suppress, Gulley testified:

"[Mr. Schwulst] Q—You said you arrested Mr. Guhlstorf in the driveway there for conspiracy to deliver a controlled substance, is that something that you on your own decided to charge him with, or what?

[Gulley] A—No, the circumstances surrounding the actual purchase, the eventual search, were all directed from the McLean County State's Attorney's Office, and it had been arranged that while, during the period of time while the warrant was being drawn for the 1420 Dillon residence, *any persons exiting the residence should be detained and charged with conspiracy to deliver the heroin involved with the actual deal that went down later.*

[Mr. Schwulst] Q—They were to be charged and detained on those grounds whether or not they were, in fact, involved as far as you would know, is that right?

[Gulley] A—Well, the information or—

[Mr. Schwulst] Q—Just answer my question.

THE COURT: Well, I think he is.

THE WITNESS: That is right, sir. The information that I had that we were working under was that those persons within the 1420 Dillon residence very possibly could be involved in the actual deal that went down at 2:50 and *it was our purpose at that time to arrest those persons that came out.*" (Emphasis added.)

In denying the motion to suppress, the court had before it Officer Raydon's report of February 28, 1976, which stated in its entirety:

"On February 27, 1976 officer C.L. Raydon was sitting in the 1400 block of Dillion [*sic*] Drive, Normal, Ill. *waiting to apprehend any subjects leaving the residence* of 1420 Dillion [*sic*] Drive.

Between the hours of 2:00 p.m. and 3:00 p.m., a male subject came out of the front door and got into a car parked in the driveway. At this time Officer Raydon pulled up behind the subject's auto, blocking the driveway. The subject was backing the auto and at this time noticed there was an auto behind his, and he turned around, looking to see what the problem was. Officer Raydon got out of the car, and approached the subjects' auto. At this time officer Raydon saw the subject reach for something in the seat, and leave the car. Officer Raydon thinking the subject might have a weapon, grabbed the subject and as Officer Raydon and the subject were swinging around in the front yard, an object was thrown into the air by the subject. As the object reached a height, the wind caught it and blew it on the roof. The object was retrieved by an IBI agent. The subject identified as Larry Guhlstorf of 1420 Dillion [*sic*] Drive, Normal, Illinois.

Said subject was arrested and booked at the Normal Police Dept." (Emphasis added.)

The arresting officers did not know the defendant's identity until after they had arrested him. Yet, they said that they were instructed to and did intend to arrest *anyone* leaving defendant's home. On these facts, we find that the arresting officers did not have probable cause or reasonable grounds to believe that the then unidentified defendant was committing or had committed an offense.

■■ We think it unfortunate that Officer Raydon and I.B.I. Agent Gulley had been directed by some higher or co-ordinating authority to arrest anyone seen exiting from the Guhlstorf residence. Proper instructions would have directed the officers to detain and question anyone leaving the suspicious house instead of ordering the arbitrary arrest of any such person. Had the officers sensed that the defendant posed a threat to their safety after detention, they could have then subjected him to a *Terry* pat down. (*Adams v. Williams* (1972), 407 U.S. 143, 145, 32 L. Ed. 2d 612, 616-17, 92 S. Ct. 1921.) Had the defendant then thrown the bottle of heroin onto the roof, the officers could have properly retrieved it because it was in plain view. *People v. Carroll* (1973), 12 Ill. App. 3d 869, 876-77, 299 N.E.2d 134.

We have already noted that the trial court, at the time it ruled on the motion to suppress, had before it some or all of the material objected to in defendant's motion to strike. Accordingly, we deny the motion to strike to the extent that it relates to Officer Raydon's report of February 28, 1976. We decline to rule on the remaining questions presented in the motion and in the briefs since they are unnecessary to our resolution of this case.

■■ For the foregoing reasons we reverse defendant's conviction for

possessing less than 30 grams of heroin. We are, however, without knowledge of other proof that the State may possess, if any, that is probative of the defendant's guilt. Accordingly, we remand the cause for proceedings consistent with law. Compare *People v. Knapp* (1959), 15 Ill. 2d 450, 454, 155 N.E.2d 565, with *Brown v. Ohio* (1977), 432 U.S. 161, 167, 53 L. Ed. 2d 187, 194, 97 S. Ct. 2221, 2226; *Blockburger v. United States* (1932), 284 U.S. 299, 304, 76 L. Ed. 306, 309, 52 S. Ct. 180, 182 and *People v. Long* (1977), 55 Ill. App. 3d 764, 370 N.E.2d 1315; see also 91 Harv. L. Rev. 101, 106-07 (1977).

Reversed and remanded.

GREEN, P. J., and WEBBER, J., concur.