THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EDWARD LEE HANCOCK *et al.*, Defendants.—(MARILYN IRENE TURNER, Defendant-Appellant.)

Fourth District   No. 14874

Opinion filed November 1, 1978.—Rehearing denied November 29, 1978.

Richard J. Wilson and Donald T. McDougall, both of State Appellate Defender's Office, of Springfield, and Jeanne Michell Zeiger, law student, for appellant.

Lee J. Plummer, State's Attorney, of Jerseyville (Robert C. Perry and Gary J. Anderson, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE REARDON delivered the opinion of the court:

On October 31, 1977, Marilyn Turner and Cynthia Grincavich were charged by information in the circuit court of the seventh judicial circuit (Jersey County) with burglary in violation of section 19—1(a) of'the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 19—1(a)). The public defender was appointed to represent both defendants. Following jury trial, both defendants were found guilty. Turner, the appellant in this cause (hereinafter referred to as appellant), was sentenced to a term of 3 to 12 years' imprisonment.

On appeal, appellant contends that: (1) She was not proved guilty beyond a reasonable doubt; (2) she was denied effective assistance of counsel by her attorney's joint representation of co-defendant, Grincavich; (3) remarks by the prosecutor concerning his personal opinion of appellant's guilt constituted improper closing argument; (4) the trial court erred in refusing her tendered instruction on circumstantial evidence; and (5) the trial court abused its discretion in imposing a greater sentence on appellant than on co-defendant, Grincavich.

The record discloses that on October 28, 1977, Thelma Alexander, a next-door neighbor of Stewart and Helen Fraley, saw Helen Fraley leave home around noon. Five minutes after Helen drove away, Alexander

observed a blue car with yellow and black license plates stop in front of the Fraley residence. A young woman got out of the car and went to the back door of the Fraley home. The woman then returned to the car and spoke with its occupants, another girl and two males. Both girls returned to the house and entered through the back door. Alexander could not identify the girls but described them as being tall and around 20 years of age. Within five minutes of observing the girls enter the Fraley residence, Alexander noticed the arrival of Janice Fraley's car.

Janice Fraley, a niece, testified that she arrived at the Fraley residence at approximately 12:15 p.m. As she drove up to the house, she noticed that the Fraleys' car and truck were both gone, and also noticed a blue and white Pontiac parked at the bottom of the hill with two people inside. The car had Missouri license plates. As she pulled into the drive, someone in the Pontiac began honking the horn.

As Janice opened the kitchen door, two girls came running from the living room into the kitchen. One girl continued running out of the house, while the other girl stopped to talk. The girl told Janice that she was looking for the "Reynolds," and that this was her grandmother's house. After informing the girl that the house belonged to the Fraleys, Janice told the girl that she was going to call the police. The girl replied, "No, it's nothing like that," and left. Janice identified the co-defendant, Grincavich, in court as the girl who stopped and talked to her inside the Fraley residence.

At this point in the testimony, the court suggested that an instruction be given that the conversation in the Fraleys' kitchen apply only to Grincavich, and that a motion to that effect by defense counsel would be entertained. Defense counsel replied:

> "Well, in order to represent Ms. Turner, I have to make it. I'm not sure it is best for Ms. Grincavich. I'm not sure as to that, but you can consider the motion made, Your Honor."

The court's suggestion and counsel's response were out of the hearing of the jury. The court, thereafter, instructed the jury that the conversation testified to between Janice and Grincavich applied to Grincavich's case only.

Janice further testified that she could not identify the other person in the house, other than: "She had black hair and it was a girl and that was about all." At the police station following the incident, Janice identified the blue and white car which she had seen outside the Fraley residence, the person who had been driving the car, and Grincavich as the girl to whom she had spoken inside the Fraley residence.

Howard Sandberg, a policeman for the city of Jerseyville, testified that pursuant to a radio dispatch, he stopped a blue and white Pontiac with Missouri license plates at approximately 12:30 p.m., on October 28,

1977, about two miles south of the Fraley home. Sandberg identified the appellant and Grincavich as having been the two female occupants of the car along with two males.

Helen Fraley testified that when she arrived home on October 28, she noticed her desk drawer and a pantry drawer open in the kitchen, a drawer open in her sewing room, and a sliding closet door open in the hall. Helen stated that nothing appeared missing from the house, and that she had not missed anything so far.

Neither the appellant nor Grincavich presented any evidence at trial.

Appellant first contends that the State's circumstantial evidence failed to establish that she was the other person with co-defendant Grincavich seen inside the Fraley home. Appellant alternatively argues that even if the evidence was sufficient to show entry, the evidence insufficiently proved that the appellant or Grincavich intended to commit a theft inside the house.

■■ Circumstantial evidence is considered good evidence and, unless there are circumstances contradicting the reasonable inferences and conclusions drawn by the jury from such circumstantial evidence, the jury's determination should not and cannot be disturbed. (*People v. James* (1974), 24 Ill. App. 3d 112, 116, 320 N.E.2d 20.) To support a conviction on the basis of circumstantial evidence, the facts presented must be inconsistent with any reasonable hypothesis of innocence. The trier of fact, however, is not required to search out a series of potential explanations compatible with innocence and elevate them to the status of reasonable doubt. (*People v. Uselding* (1976), 39 Ill. App. 3d 677, 681, 350 N.E.2d 283.) The trier of fact determines the credibility of the witnesses, the weight to be accorded their testimony, and the inferences to be drawn from the evidence. *People v. Amos* (1977), 46 Ill. App. 3d 899, 901, 361 N.E.2d 861, 863.

In *People v. Peacock* (1974), 20 Ill. App. 3d 969, 313 N.E.2d 470 (abstract), the defendant argued that the circumstantial evidence failed to prove that he was one of two persons observed during the burglary of a home. A State witness testified that when he arrived at his parents' home, he saw a white Pontiac parked outside. Upon entering the house, he observed the co-defendant, Krulih, running out the back door. The witness was able to identify Krulih at the trial. While seeking help next door, the witness observed a second man jump from an upstairs window. The witness did not see the second man's face and could not identify him as the defendant. The witness, however, was able to describe this individual as about 40 years old, 5 feet 6 inches tall, and wearing a long brown coat. The burglary was reported, and the defendant and Krulih were stopped later that day while driving a white Pontiac. The defendant was wearing a long brown coat. The defendant contended, as an alibi

defense, that he had spent the entire day with Krulih. In finding the circumstantial evidence sufficiently supported the defendant's conviction, the court noted that co-defendant, Krulih, was positively identified as one of the burglars; that defendant was with Krulih during the day; that defendant was stopped in a car similar to one observed at the scene of the burglary; and that defendant's age, height, and clothing were similar to those of the second man observed at the burglary scene.

■■ In the instant case, there is no evidence positively identifying the other girl who entered the Fraley home with Grincavich. Janice Fraley identified Grincavich but saw only the back of the other girl's head, and was unable to describe the other girl beyond the fact that she had black hair. While the record does not disclose the color of appellant's hair at the time of trial, the jury was able to observe the appellant's appearance and make reasonable inferences therefrom. Furthermore, within 20 minutes of the incident, a blue and white car was stopped about two miles south of the burglary scene by police. Inside the car were two males, Grincavich, and the appellant. As in *Peacock*, we conclude that the circumstantial evidence sufficiently proves beyond a reasonable doubt that the appellant accompanied Grincavich into the Fraley home.

■■ Intent must ordinarily be proved circumstantially by inferences drawn from conduct evaluated in its factual environment. In the absence of inconsistent circumstances, proof of unlawful breaking and entry into a building containing personal property that could be the subject of larceny gives rise to an inference that will sustain a conviction of burglary. Such an inference, like other inferences, is grounded in human experience, which justifies the assumption that the unlawful entry was not purposeless, and, in the absence of other proof, indicates theft as the most likely purpose. (*People v. Johnson* (1963), 28 Ill. 2d 441, 443, 192 N.E.2d 864; *People v. James*, 24 Ill. App. 3d 112, 115, 320 N.E.2d 20.) Consequently, it is not necessary to prove that anything was taken to support a burglary conviction. *People v. Clark* (1964), 30 Ill. 2d 216, 219, 195 N.E.2d 631.

In *People v. Barge* (1972), 7 Ill. App. 3d 721, 288 N.E.2d 492, the defendant entered an unoccupied residence during daylight hours. When confronted, the defendant stated that he was looking for a friend. The defendant fled when told by neighbors that the police had been called. Although nothing was taken, the door to a nightstand was found open. The court held that these factors were sufficient to support the inference that defendant possessed the intent to commit a theft when he entered the house.

■■ In the present case, the horn was sounded in the Pontiac as Janice Fraley arrived. When confronted, Grincavich and another female with black hair fled from the house. Although nothing was taken, doors and

drawers were found open in the house. Such circumstances sufficiently support the inference that the women entered the Fraley home with the intent to commit theft.

Appellant next argues that her counsel's joint representation restricted counsel in protecting appellant's interest. Appellant specifically argues that counsel was prevented from calling Grincavich to testify as to appellant's lack of involvement in the burglary. Appellant further maintains that separate counsel would have allowed the negotiation of a favorable plea or sentencing recommendation in exchange for defendant's testimony against Grincavich. In addition, appellant contends that the existence of a conflict of interest as a result of the joint representation of the two co-defendants was apparent when the trial judge suggested that counsel request an instruction that the conversation between Janice and Grincavich applied to Grincavich's case only.

■■ In *Holloway v. Arkansas* (1978), 435 U.S. 475, 485, 55 L. Ed. 2d 426, 433, 98 S. Ct. 1173, 1178, the Supreme Court stated that requiring or permitting a single attorney to represent co-defendants is not *per se* violative of constitutional guarantees of effective assistance of counsel. In *People v. Precup* (1978), 73 Ill. 2d 7, 382 N.E.2d 227, our supreme court recently held that, absent plain error, any alleged conflict in joint representation is waived on appeal by failure to object before or during trial or failure to raise the issue in a post-trial motion.

This court has consistently required that an actual, existing conflict of interest in the defenses presented by the co-defendants be established before there will be a finding that the joint representation denied effective assistance of counsel. (*People v. Gorecki* (1977), 54 Ill. App. 3d 267, 269, 369 N.E.2d 380; *People v. Reed* (1977), 51 Ill. App. 3d 479, 482, 366 N.E.2d 1137; *People v. Wilson* (1977), 48 Ill. App. 3d 885, 888, 363 N.E.2d 374, *appeal allowed* (1977), 66 Ill. 2d 636.) In *Wilson*, the defendant and two co-defendants charged with burglary were all represented by the same public defender. Since none of the defendants testified and since there were no inconsistent defenses which counsel was required to support, this court determined that the defendant had not been denied effective assistance of counsel.

■■ In the instant case, appellant has not shown any actual prejudice or conflict of interest as a result of the joint representation. Both appellant and Grincavich denied guilt, made no statements implicating the other, and neither testified at trial. Defense counsel's theory during closing argument appeared to be that Grincavich entered the Fraley house in the mistaken belief that the house belonged to a relative of hers and that appellant was picked up by Grincavich and the others after coming from the Fraley house. Such theories are not necessarily inconsistent with each other. We find no evidence of a conflict of interest as a result of the joint

representation in the court's suggestion that counsel request an instruction that the conversation inside the Fraley house be applied to Grincavich's case only. The instruction strengthened appellant's case and only reinforced the earlier testimony against Grincavich. In the absence of any demonstrated prejudice, a reviewing court "ought not disturb a judgment on the basis of conjectural or speculative conflicts between the interests of co-defendants which are envisioned for the first time on appeal." *People v. McCasle* (1966), 35 Ill. 2d 552, 556, 221 N.E.2d 227, 230.

Appellant refers to several remarks by the prosecutor during closing argument as prejudicially expressing an opinion of defendant's guilt. During argument, the prosecutor stated:

"As we discussed earlier, as State's Attorney, one of my duties— my primary duty—is to enforce the criminal laws of the State of Illinois and when it's brought to my attention that there is a violation of the criminal law, to file charges and to prosecute that violation.

\* \* \*

Think about it in light of your experiences in life and I believe when you do this you're going to come to the same conclusion I have come to—the conclusion that Ms. Grincavich and Ms. Turner went to that residence with the intent to commit a theft, \* \* \*.

\* \* \*

Well, now, to me, an eye-witness, sitting here in open court, under oath, 'that's her,' to me, that's pretty good testimony, \* \* \*.

\* \* \*

When you consider all the items we have mentioned, it leaves me with no conclusion but that the defendants are guilty."

■■ Defense counsel failed to object to any of these comments during closing argument and these alleged errors were not preserved in defendant's post-trial motion. Since we do not consider these remarks to constitute a material factor in appellant's conviction (*People v. Berry* (1960), 18 Ill. 2d 453, 165 N.E.2d 257, *cert. denied* (1960), 364 U.S. 846, 5 L. Ed. 2d 69, 81 S. Ct. 87), we deem the issue to have been waived. *People v. Moore* (1973), 55 Ill. 2d 570, 576, 304 N.E.2d 622; *People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856; *People v. Kelly* (1974), 22 Ill. App. 3d 111, 116, 316 N.E.2d 777.

Illinois Pattern Jury Instructions, Criminal, No. 3.02 (1968) (hereinafter cited as IPI Criminal) states in its entirety:

"Circumstantial evidence is the proof of facts or circumstances which give rise to a reasonable inference of other facts which tend to show the guilt or innocence of the defendant. Circumstantial evidence should be considered by you together with all the other evidence in the case in arriving at your verdict.

> You should not find the defendant guilty unless the facts and circumstances proved exclude every reasonable theory of innocence."

People's instruction No. 7, which was given over appellant's objection, contained the first but omitted the second paragraph of IPI Criminal No. 3.02. Since proof of her guilt in the instant case was entirely circumstantial, appellant contends that the trial court erred in refusing her request to include the second paragraph in the instruction.

■■ This court, however, has held on several occasions that failure to give the second paragraph of the instruction, even when applicable, does not constitute reversible error. (*People v. Hunter* (4th Dist. 1978), 61 Ill. App. 3d 588, 376 N.E.2d 1065; *People v. Uselding* (1976), 39 Ill. App. 3d 677, 683, 350 N.E.2d 283; *People v. Hammers* (1976), 35 Ill. App. 3d 498, 507-08, 341 N.E.2d 471, *cert. denied* (1976), 429 U.S. 1002, 50 L. Ed. 2d 614, 97 S. Ct. 534.) Accordingly, we conclude that the trial court's refusal to instruct the jury with the second paragraph of IPI Criminal No. 3.02 in the instant case was harmless error.

Appellant received a sentence of 3 to 12 years' imprisonment, while co-defendant, Grincavich, received a sentence of 2 to 8 years' imprisonment. Appellant argues that there is nothing in the record showing that she was more culpable than Grincavich, nor is there any substantial difference in their prior records which would justify the disparity in the sentences imposed.

It is clear that fundamental fairness and respect for the law require that defendants similarly situated may not receive grossly disparate sentences. (*People v. Henne* (1973), 10 Ill. App. 3d 179, 180, 293 N.E.2d 172.) This court has stated that disparity of sentencing is to be avoided and that similarly situated defendants with comparable potential for rehabilitation who are guilty of like offenses should be given like sentences. *People v. Broom* (1977), 48 Ill. App. 3d 994, 995, 363 N.E.2d 635.

■■ In the instant case, the record reveals that the appellant had four prior convictions for theft and retail theft. Grincavich had two prior convictions for theft and retail theft, as well as a conviction for disorderly conduct. The record does not reflect sufficient information to make additional comparisons of their backgrounds. Under the facts presented, the appellant does not appear any more or less culpable than co-defendant, Grincavich. Moreover, the sentences of 3 to 12 years and 2 to 8 years do not appear to be grossly disparate. Although Supreme Court Rule 615(b)(4) (58 Ill. 2d R. 615(b)(4)) authorizes this court to reduce or modify sentences imposed by trial courts, the rule does not authorize this court to "tinker" with sentences. (*People v. Hines* (1976), 44 Ill. App. 3d 204, 206, 357 N.E.2d 884.) Furthermore, the imposition of a sentence is a

matter of judicial discretion, and, absent abuse of this discretion, the sentence of the trial court may not be altered on review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882.) Accordingly, we defer to the trial court's determination in imposing the respective sentences in the present case.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

GREEN, P. J., and MILLS, J., concur.