*In re* G. L. C., a minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* G. L. C., Respondent-Appellant.)

Fourth District   No. 14941

Opinion filed November 9, 1978.—Rehearing denied December 8, 1978.

Richard J. Wilson and Don L. Johnson, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Robert C. Perry and Denise M. Paul, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE REARDON delivered the opinion of the court:

On March 14, 1978, a two-count petition for adjudication of wardship was filed alleging that the 16-year-old respondent was a "delinquent minor" for committing the offense of burglary in violation of section 19—1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 19—1(a)). Following an adjudicatory hearing, the respondent was found guilty of burglary and subsequently adjudged a delinquent minor, made a ward of the court, and placed on probation for 2 years. On appeal, respondent contends that the warrantless search of his outer clothing was unlawful, and that he was not proved guilty of burglary beyond a reasonable doubt.

At a hearing on respondent's motion attacking his arrest and to suppress evidence illegally seized, Lyle Trotter, an investigator with the Urbana police department, testified that at approximately 1:46 p.m., on March 14, 1978, he received a call over the police radio of his squad car. The broadcast stated that a person had just run from a security guard at Urbana High School, in connection with a theft. The description given was of a "Negro male, wearing a black hat, a blue jacket, khaki pants." A short time later, Trotter saw someone he believed fit the description approximately three blocks from the high school. Trotter alighted from his car, identified himself as a police officer, and asked the person for his name. The individual, identified in court as the respondent, answered with the same name which had been aired over the police radio.

Officer William Cedusky arrived momentarily. Trotter informed Cedusky that the respondent was to be taken back to the high school. Trotter then patted the respondent down for weapons. Trotter removed some black rubber stoppers, two glass tubes, and a watch from the respondent's pockets, and gave these items to Cedusky. The respondent was taken back to the high school in Cedusky's squad car. Trotter testified that the respondent was under arrest at this time.

At the court's request, Trotter clarified his earlier testimony concerning the radio communique he had received. He stated that there were

actually two radio dispatches. The first dispatch stated that a Negro male had broken away from a security guard at Urbana High School. The second dispatch gave the physical description and the name of the suspect. The court then determined that the "stop and frisk" of the respondent and the subsequent search and seizure of the items in his possession were valid, and denied the motion.

At the adjudicatory hearing, Karen Lowry, age 15, a student at the high school, testified that after her physical education class on March 14, which normally began at 11:15 a.m., she returned to the girls' locker room and found her watch missing. Lowry had put the watch in her shoe, put her shoes in her locker, and placed the rest of her clothing on top of them. Before leaving for class, Lowry had secured her locker with a combination lock. Lowry identified the watch in petitioner's group exhibit No. 1 as being the missing watch.

Elga Kyse, attendance officer at the high school, testified that he saw the respondent at approximately 12:45 p.m., on March 14, on the first floor of the high school building. Kyse asked the respondent to leave the building. Approximately one hour later, Kyse saw the respondent again, this time descending some steps coming from the third floor of the building. Kyse asked the respondent to accompany him to the office of the dean of boys. While on the way, the respondent broke away from Kyse and ran.

Steve Storch, a science instructor and chairman of the science department at the high school, testified that the science materials, rubber stoppers and glass tubes, in petitioner's group exhibit No. 1 looked "very familiar." Storch stated that there were several hundred such stoppers in the two science rooms located on the third floor of the high school and that no inventory had been taken of them.

After the State rested, the court directed a verdict as to count II regarding the alleged theft of science materials, but denied the motion as to count I which had charged the respondent with entering the girls' locker room with the intent to commit theft.

The respondent testified that after leaving the high school building at approximately 11 a.m., on March 14, he met two friends and walked with them to the "hole," a location just outside the school building by the girls' locker room. Although admitting that there was a door by the "hole," which opened and led into the girls' locker room, the respondent stated that he never entered the girls' locker room at any time on the morning of March 14. While at the "hole," respondent testified that he spotted the watch on the ground, but was afraid to take the watch to one of the school offices because he feared he would be expelled from school if Kyse saw him in the building again that day.

Respondent first contends that the officer's search of his outer clothing resulting in the discovery of the stolen items exceeded the scope of a frisk

and was unreasonable pursuant to section 107—14 of the Code of Criminal Procedure of 1963. (Ill. Rev. Stat. 1977, ch. 38, par. 107—14.) Respondent additionally argues that the arresting officer did not possess sufficient factual information to support a finding of probable cause for the warrantless arrest which followed the search.

■■ We agree with defendant's contention that the search, if measured by the standards of section 107—14 of the Code and *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, was unlawful. We conclude, however, that the search and subsequent seizure of the watch, test tubes, and rubber stoppers were conducted incident to respondent's arrest. An arrest involves three elements: authority to arrest, assertion of that authority with intent to effect an arrest, and restraint of the person to be arrested. (*People v. Robbins* (1977), 54 Ill. App. 3d 298, 302, 369 N.E.2d 577, 579; *People v. Grant* (1976), 38 Ill. App. 3d 62, 68, 347 N.E.2d 244.) An arrest has occurred where a reasonable man, innocent of any crime, would have believed himself to be under arrest, given the actions of the arresting officer. (*People v. Wipfler* (1977), 68 Ill. 2d 158, 166, 368 N.E.2d 870, 872-73; *People v. Guhlstorf* (1978), 56 Ill. App. 3d 381, 384, 371 N.E.2d 1277, 1279.) No formal declaration of arrest is necessary for a valid arrest to occur. *Robbins.*

■■ In the instant case, respondent's arrest was completed when Officer Trotter took the respondent over to the squad car and indicated that the respondent was to be taken back to the high school. The officer's act of taking the respondent over to the squad car, coupled with the announcement of their destination, constituted an assertion of authority and intent to take the respondent into custody. Clearly, respondent's liberty had been significantly restrained at this point. The subsequent search of respondent's outer clothing was, therefore, incident to custodial arrest.

Section 107—2 of the Code provides that a peace officer may arrest a person when the officer has reasonable grounds to believe that the person is committing, or had committed, an offense. Probable cause exists where a reasonable and prudent man, having the knowledge possessed by the officer at the time of the arrest, would believe that the defendant committed the offense. (*People v. Wright* (1968), 41 Ill. 2d 170, 174, 242 N.E.2d 180, 183, *cert. denied* (1969), 395 U.S. 933, 23 L. Ed. 2d 448, 89 S. Ct. 1993.) The statute does not require that the officer must know an offense actually has been committed before an arrest may be made. (*People v. Beall* (1976), 42 Ill. App. 3d 452, 455, 355 N.E.2d 756.) Furthermore, whether or not probable cause for an arrest exists in any given case depends upon the totality of the facts and circumstances known to the officers when the arrest was made. *People v. Clay* (1973), 55 Ill. 2d 501, 504, 304 N.E.2d 280.

■■ Although Officer Trotter supplemented his earlier testimony at the suppression hearing by stating that there were actually two radio dispatches, he initially testified that the information received over the radio contained a reference to a theft. The respondent, who matched the description given over the radio, was stopped within three blocks of the school shortly thereafter. The respondent gave the same name that had been aired over the radio. We conclude that sufficient probable cause existed to arrest the respondent under the circumstances.

Respondent secondly contends that the State's circumstantial evidence failed to show that he entered the girls' locker room with intent to commit theft.

■■ Circumstantial evidence is good evidence, and, unless there are circumstances contradicting the reasonable inferences and conclusions drawn by the trier of fact from such circumstantial evidence, the determination by the trier of fact should not be disturbed. (*People v. James* (1974), 24 Ill. App. 3d 112, 116, 320 N.E.2d 20.) In a burglary prosecution, entry and the manner thereof, as well as intent to commit a felony or theft, may be inferred from facts and evidence. (*People v. Cokley* (1977), 45 Ill. App. 3d 888, 890, 360 N.E.2d 545.) The fact that a larceny was actually committed is evidence that the breaking and entering was accomplished with intent to commit that offense. *People v. Franceschini* (1960), 20 Ill. 2d 126, 130, 169 N.E.2d 244.

■■ Moreover, the recent, exclusive, and unexplained possession of stolen property by an accused in itself gives rise to an inference of guilt which may be sufficient to sustain a conviction in the absence of other facts and circumstances which leave in the mind of the trier of fact a reasonable doubt of guilt. (*People v. Townsend* (1977), 47 Ill. App. 3d 789, 792, 365 N.E.2d 110.) Further, flight from the scene of a crime is a form of circumstantial evidence based upon an inference that such a response has a reasonable relationship to consciousness of guilt; and the evidence of an accused's flight may be considered with other evidence tending to prove guilt. (*Cokley.*) Finally, to support a conviction on the basis of circumstantial evidence, the facts proved must be inconsistent with any reasonable hypothesis of innocence. This does not mean, however, that the trier of fact is required to search out a series of potential explanations compatible with innocence and elevate them to the status of reasonable doubt. *People v. Uselding* (1976), 39 Ill. App. 3d 677, 681, 350 N.E.2d 283.

■■ In the instant case, the respondent's possession of the watch gives rise to the inference of his guilt in the theft of the watch from the girls' locker room. The respondent's flight from the attendance officer also raises an inference of guilt. Furthermore, respondent's explanation that he found the watch just outside the locker room does not appear credible in view of

Lowry's specific testimony that she placed the watch in a shoe in her locker on March 14, and secured her locker with a combination lock. Finally, respondent's presence at the "hole" coincided with the time period in which the locker room would be vacant because class had begun. An unlocked door leading directly to the gym lockers was accessible from the "hole." The inferences to be drawn from the facts and evidence are for the trial court and unless they are inherently impossible or unreasonable, they should be accepted by the reviewing court. (*People v. Dunham* (1973), 13 Ill. App. 3d 784, 786, 300 N.E.2d 328.) Accordingly, we defer to the trial court's determination that the circumstantial evidence proved the respondent guilty beyond a reasonable doubt.

For the foregoing reasons, the judgment of the circuit court of Champaign County is affirmed.

Affirmed.

GREEN, P. J., and MILLS, J., concur.