THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THOMAS EDWARD USELDING *et al.,* Defendants-Appellants.

Fourth District   No. 13140

Opinion filed June 24, 1976.

Martin S. Gerber, of Chicago, for appellants.

John G. Satter, Jr., State's Attorney, of Pontiac (G. Michael Prall, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE CRAVEN delivered the opinion of the court:

Defendants Thomas Edward Uselding and Andrew Snyder were

charged in separate indictments with burglary of a farmhouse located at Route 47 and Emington Road, and with theft by obtaining unauthorized control over 37 cans of an agricultural chemical belonging to the Standard Oil Company. Defendants were tried together and, after a jury verdict of guilty, each was sentenced to 5 to 20 years in the Illinois State Penitentiary and fined $300.

On May 7, 1974, personnel at the Standard Oil plant at Reddick, Illinois, discovered that a door panel at the plant was broken and approximately 80 to 86 5-gallon cans of an agricultural chemical called Treflan were missing. The missing cans were approximately 18 inches in diameter and 2½ feet tall, and were valued at $139 each. Each can bore one of two lot numbers: 0149A and 0228A. On the morning of May 10, 1974, Wendall Lighty, a tenant on a farm located at the intersection of Laretto-Emington Road and Route 47, visited an abandoned farmhouse on the northeast corner of the intersection. When he arrived at the farmhouse, he noticed that the back door and the outside cellar door were open. Lighty entered the basement and discovered 37 5-gallon cans of Treflan behind the furnace. He notified the Livingston County sheriff's department of his discovery.

Officers Ferguson and Lamb responded to Lighty's call. They examined the 37 cans and found that the cans bore the lot numbers of the cans taken from the Standard Oil plant. After examining the cans, Officers Ferguson and Lamb checked the other farm buildings but found no other persons or cans of chemicals. They then drove to a point on the northwest corner of the intersection across Route 47 on the Laretto blacktop road, about one-eighth to one-fourth of a mile from the farmhouse. There they took up surveillance of the farmhouse. At the intersection, Route 47 runs north and south and the Emington-Laretto Road runs east and west. East of the intersection, the concrete road is called Emington Road; west of the intersection, the blacktop road is called Laretto Road. Although their view of the intersection itself was blocked by a clump of trees, the officers could see traffic approaching from all four directions. From their position, the officers could look across Route 47 at the farmhouse, but they could not see the basement door, which was located on the east side of the house.

Constant surveillance was maintained by the sheriff's department. No activity occurred at the farmhouse until shortly after Officer Whitmar arrived to join Officer Mills at the surveillance post at about 11:45 p.m. At that time, the officers heard a vehicle approach and saw the amber clearance lights on top of the vehicle. They lost sight of the vehicle due to the trees, but were still able to hear it. They heard the vehicle slow down and come to a stop at the stop sign on Route 47, start up again, and then come to a stop for a second time. Whitmar got out of his car and walked

two or three steps to the south toward Laretto Road. There he could again see the clearance lights on the vehicle, which was parked by the side of the road. Whitmar returned to the car and continued to observe the house. The officers observed a subject walk from the south toward the farmhouse. The subject appeared to be of from medium to large build. The officers then observed another subject coming from the same area as the first subject. The second subject appeared to be slightly smaller than the first. Both figures wore dark clothing. Subsequently, a figure was seen walking south away from the house. Two or three minutes later, the officers heard the vehicle start up and soon saw it pass by them going west on Laretto Road. At that time, the officers observed that it was a camper-type vehicle or motor home. Mills and Whitmar began to follow the motor home and radioed for assistance to Officer McCarty, who was farther west on Laretto Road. Mills and Whitmar kept the vehicle in sight until it was stopped by Officer McCarty about two miles west of Route 47.

McCarty approached the vehicle and asked the driver, Uselding, for his driver's license. He ran a driver's license check, discovered that the license was not on file and placed Uselding under arrest for having an altered driver's license. Defendants were taken to the Livingston County jail. After arriving at the jail, Uselding was charged with burglary and illegal transportation of alcohol. Snyder and his wife, who was also in the motor home, were arrested for illegal transportation of alcohol. Subsequently, Snyder was charged with burglary.

While the motor home was being stopped by McCarty, Officers Gragert and Klein went to the farmhouse. There were no persons in the yard and no vehicles in sight on the road when they arrived. The Treflan had been removed from the basement and was stacked two or three cans deep on the east side of the house, near the entrance to the basement. It had rained earlier and the ground was wet, but the tops of the cans were dry. The officers investigated all of the farm buildings and found no one.

The motor home was searched at the jailhouse after defendants had been taken into custody. Officers Whitmar and Klein entered the motor home to look for the chemical cans involved in the burglary. Officer Gragert entered the motor home for the purpose of securing the vehicle identification number, as well as finding possible evidence. Officer Whitmar found a 15-inch piece of metal, about one-eighth or one-sixteenth of an inch in thickness, in a compartment to the right of the van door. Officer Klein found a pair of wet boots in a drawer under the refrigerator. Officer Gragert found some open beer cans containing beer.

Defendants filed a motion to suppress illegally seized evidence, which was granted in part and denied in part. A number of items seized on a date subsequent to the original search of May 11, 1974, were suppressed.

The motion was denied as to the cans of beer, the wet boots, the piece of metal, a sweater, and a pair of black loafers taken from the person of defendant Snyder.

Judy Snyder, defendant Snyder's wife, testified that on May 10, 1974, she and Snyder discussed going to St. Louis. They had been thinking about taking over the payments on a motor home owned by a Mr. Gunkelman and decided to call Uselding and test drive the motor home. They planned to drive to St. Louis Friday and return Saturday night or Sunday morning. En route to St. Louis, Snyder decided he wanted to stop in Monticello to see a friend with whom he had been in the service. About 15 minutes south of Dwight on Route 47, Judy Snyder smelled propane gas. They pulled over at the intersection of Route 47 and Laretto-Emington Road. Snyder and Uselding went outside to check for gas. Judy Snyder watched out the window and had them in sight at all times. When they returned, they had a piece of metal which came from the camper near the gas control. After having stopped for about seven or eight minutes, they decided to cancel their trip to St. Louis and go back to a gas station at which they had stopped earlier. They were proceeding down Laretto Road to find a road upon which to turn around when they were stopped by the police.

Both defendants were found guilty by jury verdict of burglary and theft. Each defendant was sentenced to 5 to 20 years in the penitentiary and a fine of $300. Defendants appeal.

■■ Defendants first contend that their guilt was not established beyond a reasonable doubt. The evidence relative to defendants' actual movement of the goods is circumstantial. This court has recently summarized the pertinent rules under such circumstances:

> "The rule is that to support a conviction based on circumstantial evidence, the facts produced must not only be consistent with defendant's guilt, but they must also be inconsistent with any reasonable hypothesis of innocence. Such proof need not be beyond the possibility of a doubt *(People v. Branion,* 47 Ill. 2d 70, 265 N.E.2d 1, *cert. denied,* 403 U.S. 907, 91 S. Ct. 2213, 29 L. Ed. 2d 683), and may be inferred from the circumstances proved. *(People v. Huff,* 29 Ill. 2d 315, 194 N.E.2d 230.)* This rule does not contemplate that the trier of fact is required to search out a series of potential explanations compatible with innocence and elevate them to the status of a reasonable doubt, but a jury's verdict will be reversed on grounds of insufficient evidence where there is a reasonable and well founded doubt of guilt and the verdict is found to be palpably contrary to the weight of the evidence. *People v. Zuniga,* 53 Ill. 2d 550, 293 N.E.2d 595." *People v. Harris,* 34 Ill. App. 3d 906, 908, 340 N.E.2d 327, 329.

None of the cans of Treflan were found in the defendants' possession. The evidence established that the cans had been moved from the basement of the farmhouse to a location just outside the basement door. Defendants argue that someone could have entered the basement from the east and moved the cans without being observed by the officers. From the surveillance point west of Route 47, it is undisputed that the officers could not see the basement door which was located on the east side of the house. Following discovery of the cans, however, the house was placed under continuous surveillance. No persons or vehicles were observed at or near the farmhouse until approximately 11:45 p.m., May 10, 1974, when defendants' motor home arrived and the officers observed two persons going towards the farmhouse. The officers determined that one person appeared to be of medium to large build and the second person appeared to be slightly smaller. The only other person in the area was subsequently determined to be Snyder's wife. Mrs. Snyder is 5 foot 1 inch tall, and the evidence established that neither of the two persons approaching or leaving the house was that short. After defendants' vehicle left the area, the officers checked the farmhouse and found 37 cans of Treflan stacked outside the house. It had rained until approximately 11 p.m. on May 10, and the ground was wet. Yet, when the cans were discovered outside the house, they were all dry. Also, a pair of wet boots was subsequently found in the motor home. Shortly after Officers Mills and Whitmar left the intersection to follow the motor home, Officer Cross arrived there. He did not observe any persons or vehicles in the area. Officers Gragert and Klein then arrived at the farmhouse and searched the house and all the farm buildings, finding no one.

■■ The jurors were not bound to accept every possible hypothesis of innocence and could have reasonably concluded that defendants and no one else entered the farmhouse and moved the cans. Defendants' theory, although a possibility, is not of such character as to create a reasonable doubt of guilt. We conclude that the evidence presented by the State supports defendants' convictions.

Defendants contend that the trial court erred in refusing to instruct the jury, as provided in the second paragraph of Illinois Pattern Jury Instructions, Criminal, No. 3.02 (1968), that a circumstantial evidence case should exclude every reasonable hypothesis of innocence. IPI Criminal No. 3.02 provides:

> "Circumstantial evidence is the proof of facts or circumstances which give rise to a reasonable inference of other facts which tend to show the guilt or innocence of the defendant. Circumstantial evidence should be considered by you together with all the other evidence in the case in arriving at your verdict.
>
> You should not find a defendant guilty unless the facts and

circumstances proved exclude every reasonable theory of innocence."

The Committee Comments to the instructions state that the second paragraph should be given only when proof of guilt is entirely circumstantial. This court has noted the difficulty in distinguishing direct from circumstantial evidence in the context of reviewing IPI Criminal No. 3.02, and the reluctance of courts to rule that failure to give the second paragraph is reversible error. *People v. Hammers,* 35 Ill. App. 3d 498, 341 N.E.2d 471; *People v. Jackson,* 37 Ill. App. 3d 279, 345 N.E.2d 509.

■■ On the basis of the record before us we conclude that the proof of guilt was circumstantial. Accordingly, paragraph two of IPI Criminal 3.02 should have been given to the jury. In view of the compelling nature of the evidence of defendants' guilt, however, that error does not justify a reversal of defendants' convictions. We therefore hold that the refusal to give paragraph two of IPI Criminal 3.02 was not reversible error.

■■ Defendants argue that the trial court erred in admitting evidence concerning the prior burglary at the Reddick Standard Oil plant because its prejudicial effect outweighed· its probative value. Defendants, in contending that the origin of the chemical cans was irrelevant, direct their arguments to the issues presented by the burglary charge. Defendants, however, were also charged with theft over $150 under section 16—1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 16—1(a)). The State was therefore required to prove ownership of the Treflan. Testimony concerning its origin at the Reddick Standard Oil plant was pertinent to that question. The State was also required to prove that the exertion of control over the cans was unauthorized. Testimony concerning the burglary at the Reddick plant was necessary to show that the placing of the cans in the farmhouse was not pursuant to the authority of Standard Oil or its agents. No error was committed by the admission of such evidence.

■■ The trial court refused the following defense instruction:
"The testimony of a police officer should be given no greater weight than the testimony of any other witness."

Defendants argue that this was error. IPI Criminal No. 3.19, which is entitled "Weighing Police Testimony" states that the Committee "recommends that no instruction be given on this subject." Supreme Court Rule 451(a) (Ill. Rev. Stat. 1973, ch. 110A, par. 451(a)) requires the use of Illinois Pattern Instructions in criminal cases. We conclude that the instruction was properly refused. *People v. Taylor,* 8 Ill. App. 3d 727, 290 N.E.2d 342.

■■ ■ Defendants argue that the warrantless search of the motor home was made without probable cause. It is undisputed that the search

took place at the county jail without a search warrant after defendants had been arrested and were in custody. We first note that under the United States Supreme Court decision in *Chambers v. Maroney,* 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975, the fact that the search occurred after the defendants were in custody and the vehicle was in police custody does not by itself invalidate the search. (See also *People v. Canaday,* 49 Ill. 2d 416, 275 N.E.2d 356.) The standard upon which a warrantless search of a vehicle is tested is whether at the time of the search the police officers had probable cause. *(Chambers,* 399 U.S. 42, 52, 26 L. Ed. 2d 419, 428, 90 S. Ct. 1975.) In the instant case, the farmhouse was placed under continuous surveillance from the time of the discovery of the Treflan cans there. No person or vehicle stopped at or near the farmhouse until defendants arrived. After defendants departed, the cans were found moved from the farmhouse to the yard. Under these circumstances, the officers could have reasonably believed that the persons in the motor home had stored the chemical cans in the farmhouse and were in the process of retrieving and transporting the goods. The officers therefore had probable cause to search. *Chambers; People v. Wolf,* 60 Ill. 2d 230, 326 N.E.2d 766; *People v. Palmer,* 62 Ill. 2d 261, 342 N.E.2d 353.

■■ Defendants submit that they had a higher expectation of privacy in the motor home than they would have had in an ordinary vehicle. Defendants, however, borrowed the motor home for a trip to St. Louis. Thus, assuming *arguendo* that in some cases a motor home might not constitute a vehicle, the motor home in the instant case was clearly being used as a vehicle and not as defendants' residence. Our review of the record leads us to conclude that the search was valid.

■■ Last, although this contention has not been raised on appeal, we note that convictions were entered on both the burglary and the theft charges. The unauthorized entry with intent to commit a theft and the actual theft constitute two offenses arising out of the same conduct. *(People v. Woods,* 23 Ill. App. 3d 480, 319 N.E.2d 263.) Only the conviction for the most serious of the offenses, burglary, can stand, and the judgment on the theft conviction must be reversed. *People v. Gentry,* 19 Ill. App. 3d 861, 312 N.E.2d 441.

Defendants' convictions for burglary are affirmed; the convictions for theft are reversed. The sentences imposed are affirmed. The cause is remanded to the circuit court with directions to issue an amended *mittimus.*

Affirmed in part, reversed in part, and remanded with directions.

GREEN and SIMKINS, JJ., concur.