THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
THOMAS FRENCH, Defendant-Appellant.

First District (2nd Division)   No. 77-846

Opinion filed April 18, 1978.

Santo J. Volpe, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Joseph P. Quirk, Lee T. Hettinger, and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DOWNING delivered the opinion of the court:

In a jury trial, defendant was convicted of burglary (Ill. Rev. Stat. 1975, ch. 38, par. 19—1) and sentenced to a term of two to eight years in the Illinois State Penitentiary. He appeals from his conviction. The issues raised on appeal are (1) whether the trial court erred in allowing into evidence a certain tire iron found near the scene of defendant's arrest; (2) whether certain remarks of the prosecutor during closing argument denied defendant a fair trial; (3) whether defendant was convicted beyond a reasonable doubt; and (4) whether the trial court erred in instructing the jury on the use of circumstantial evidence.

At 2 p.m. on February 2, 1974, Mr. and Mrs. Edwin Messervey were having lunch in the kitchen of their home in Park Ridge, Illinois. A window in the east wall of their kitchen faced the home of their neighbor, Mrs. Helen Korenevich. From their kitchen window, the Messerveys had an unobstructed view of Mrs. Korenevich's jalousie window-enclosed

back porch. Just east of the enclosed porch, Mrs. Korenevich's house extended southward into the back yard for a number of feet. At the south end of this extension was a stairway entrance into the basement. Mrs. Messervey called her husband's attention to a man walking between the two houses. The man walked around the jalousie porch and stood at the door. Because of the angle at which they viewed the scene, the Messerveys could not actually see the door to the porch. Also, the porch windows which faced the Messervey house were made of frosted glass, so that they could not see inside the porch. The man walked back and forth behind the porch. He looked up at the roof. Then he walked back between the houses and out to the street. Aware that Mrs. Korenevich was not at home, the Messerveys walked to the living room of their home and continued their observation of the man, who they later learned was named Ronald Schwartz. They watched as Schwartz walked to a light-colored Chevrolet sedan parked five or six houses west of the Messervey home. He approached the car on the driver's side, and had a conversation with another person inside the car. Then the other person, whom they identified as the defendant, got out of the car. Schwartz then opened the trunk. Mr. Messervey testified that Schwartz reached into the trunk, but he could not see if he had removed anything. Mrs. Messervey testified that she saw both men lean into the trunk and remove an object. Both men then walked back toward the Messervey home, up the sidewalk toward the house, and then through the passageway between the two houses. Defendant, they observed, walked with a noticeable limp. The Messerveys returned to their kitchen window from which they saw the two men standing in front of the entrance to the enclosed porch. Moments later they entered. Mr. Messervey then called the Park Ridge Police.

Police officer Curtis Frost responded to the call. He found the front door to the Korenevich home locked. He walked around to the rear and examined the door to the enclosed porch. The wooden door frame was splintered and broken. The handle on the door was bent. Frost then entered the porch. When he examined another door located between the porch and the garage, he found it was also splintered and damaged. He went through that door into the garage. The next door he confronted, which led from the garage into the house, was locked. Frost knocked on the door. He heard two male voices inside the house.

Frost then retraced his steps around to the front of the house. Defendant and Schwartz then ran across his path, running away from the area of the front door. Frost observed that the front door to the house was now open. He pursued the two men as they ran toward the parked car. Defendant fell down, and Frost placed him under arrest. Schwartz ran between two houses on the other side of the street. He was later apprehended by Officer Scarra. Scarra found a woman's Timex watch

and a foreign coin in Schwartz's pocket. A car key, which fit the 1971 Chevrolet near the point at which defendant was arrested, was also found in Schwartz's pocket.

Officer William Vallas, who also responded to the call, recovered a tire iron from the street in front of the car, west of where defendant was apprehended. Vallas looked into the trunk of the car. There was no tire iron there. Vallas and Frost then went back to the Korenevich house with the tire iron. Vallas placed the pointed end of the tire iron into the gouge marks on the door frame of the broken doors. The tire iron fit into the marks.

Inside the house, both bedrooms had been ransacked. The dresser drawers had been dumped out, and the closets disturbed. A number of fur coats lay on one of the beds.

Mrs. Korenevich returned home from work at approximately 6 p.m. She was met outside by Mr. Messervey. She found the doors to the porch and to the outside broken, their handles bent, and the locks hanging loose. At defendant's trial, she testified that she had arisen that day at around 6 a.m. Before she left the house, she went outside through the jalousie porch to fill a bird feeder in the back yard. At that time the doors were intact. She locked them upon her return to the house. She did not make it a practice to lock the door between the house and the garage. She checked all doors prior to leaving the house. All were secure. There was nothing on the bed except for a blouse she had placed there. All of the dresser drawers were in place. The house was in order. When she returned that evening, the blouse was on the floor near the front door. The bedrooms had been ransacked. She determined that the only items missing were a broken woman's Timex watch, and a Polish "Copernicus" coin made of silver. She had given no one permission to enter her house that day.

Defendant testified in his own behalf that Ronald Schwartz had asked him to take a ride with him to help him "pick up" something. Although defendant had injured his ankle the day before, and walked with difficulty, he agreed to go. When they arrived at their destination, Schwartz told him to wait in the car. Schwartz walked to a house five or six houses east of the car and then "went off to the side," where defendant could not see him anymore. Schwartz returned shortly thereafter and asked defendant to come with him. As defendant got out of the car, he heard the trunk lid close. He did not see Schwartz remove anything from the trunk. He denied being present when the trunk was opened or having removed anything. As they began to walk around to the back of the house, defendant asked Schwartz why they weren't going up to the front door. Schwartz responded that "the guy" had told him to come around to the back. When they got around to the back of the house, Schwartz "took a bar out of his sleeve." He asked Schwartz what he was doing. Schwartz

told him to shut up. Defendant then backed away, and ran around the other side of the house to the street. When he was a couple of houses to the west of Mrs. Korenevich's, he saw the police car pull up. He started to walk back toward the house, when Schwartz ran out of the front door and told him to run. Defendant became afraid and started to run. He slipped on some ice, fell, and was arrested. Defendant testified that in 1964, he was convicted of burglary and robbery; in 1968, he was convicted of unlawful use of weapon and robbery; and in 1974, he plead guilty to a charge of theft. He denied having entered the Korenevich house or having any conversation therein with Schwartz. On cross-examination, he testified that when he left Schwartz at the porch door, he had to run through some snow in order to reach the east side of the house. This testimony was contradicted by that of Officer Vallas that he observed no footprints in the snow at that location on the day of the burglary.

## I.

■■ Defendant contends the admission of a tire iron into evidence was improper because there was no evidence connecting the tool to defendant. Physical evidence may be admitted provided there is evidence to connect it with the defendant and with the crime. While it is not necessary to show that an object admitted in evidence was actually used, it is required that the object be at least suitable for the commission of the crime. (*People v. Miller* (1968), 40 Ill. 2d 154, 159, 238 N.E.2d 407.) Defendant has not argued that the evidence of the tire iron was not sufficiently connected to the crime to be admissible. Indeed, defendant himself testified that when he and Schwartz were at the porch door, Schwartz pulled a "bar" out of his sleeve. Moreover, we believe the record demonstrates sufficient circumstantial evidence to link the tire iron to defendant. Mrs. Messervey testified that she saw defendant and Schwartz remove an object from the trunk of the car. Defendant denied being present at the time the trunk was opened, denied possession of the tool, and maintained that Schwartz had a "bar" in his possession. The fact that defendant was not in actual possession of the tool at the time of his arrest is a circumstance which affects only the weight of the evidence, not its admissibility. *Cf. People v. Bryan* (1963), 27 Ill. 2d 191, 188 N.E.2d 692; *People v. Garcia* (2nd Dist. 1972), 7 Ill. App. 3d 742, 747, 288 N.E.2d 637.

■■ Defendant also contends that it was improper to admit the evidence that Officers Vallas and Frost compared the tire iron with the gouge marks on the door frame without the use of an expert. The record shows, however, that the evidence was admitted to show that the tire iron was suitable for the commission of the crime, not necessarily as proof that it was the very tool used. When presented for this purpose, there is no need

for expert testimony. Expert testimony is properly admissible when the subject matter is sufficiently beyond common experience so that only persons of skill or experience are capable of forming a correct judgment as to any connected fact. (*People v. Fisher* (1930), 340 Ill. 216, 240, 172 N.E. 743; *People v. Carbona* (1st Dist. 1975), 27 Ill. App. 3d 988, 1002, 327 N.E.2d 546.) That a tire iron is a suitable tool for use in breaking into a house is not a matter sufficiently beyond common experience such that only persons of skill or experience are capable of forming a correct judgment. There was no error in admitting the tire iron into evidence.

## II.

Defendant contends that certain remarks of the prosecuting attorney during closing argument denied him a fair trial. We note that defendant raised no objection to these remarks at trial, but raised the issue for the first time in his motion for a new trial.

The first remark about which defendant complains is the statement:

"And you will have pictures that will be given to you that you may refer to, and there were no footprints."

This comment relates to one of the key conflicts in the evidence—the presence or absence of footprints in the snow between the porch and the east side of the house. The court admitted photographs of the scene, over defense objection that they were taken a year after the burglary.

■■ We have examined the photographs which have been made a part of the record before this court. In them, there is an amount of snow on the ground, but no footprints are evident. The jury, however, was well aware that the photographs were taken a year after the occurrence. It requires no mental gymnastics to know that the absence of footprints in the snow in these photographs is not conclusive of their absence a year before. In any event, the jury was admonished by both counsel and by the court that arguments of counsel are not to be considered by them as evidence. These admonitions were adequate, under such circumstances, to protect defendant's right to a fair trial.

■■ The second remark complained of is that the prosecutor incorrectly attributed the testimony relating to the absence of footprints to Officer Frost, when in fact the source of that evidence was Officer Vallas. Defendant maintains he was prejudiced by this error, because the jury might be misled to conclude that Vallas' observations were corroborated by Frost. In our view, the admonitions by counsel and by the court that closing arguments are not evidence were sufficient to protect defendant's right to a fair trial.

■■ Defendant also complains of the prosecutor's statements that: defendant and Schwartz removed the tire iron from the trunk of the car,

when in fact the evidence was only that they had removed "an object" from the trunk; also, that the tire iron removed from the trunk was the same one used to gain entry into the house. We conclude that both of these statements were legitimate inferences which might properly be drawn from the record. Even if the remarks were improper, based on the record before this court, they were not prejudicial to the defendant.

### III.

Defendant strongly urges that he was not proved guilty beyond a reasonable doubt because the evidence against him was wholly circumstantial and failed to preclude all reasonable theories of innocence.

The nature of the crime of burglary is such that its elements may be proved by circumstantial evidence and the inferences drawn therefrom. (*People v. Palmer* (1964), 31 Ill. 2d 58, 66, 198 N.E.2d 839.) Where, as here, a conviction is based on circumstantial evidence, it is essential that the facts proved be not only consistent with the guilt of the accused but they must be inconsistent with any reasonable hypothesis of innocence. (*People v. Magnafichi* (1956), 9 Ill. 2d 169, 173, 137 N.E.2d 256.) The State is not required, however, to establish guilt beyond the *possibility* of doubt. (*People v. Branion* (1970), 47 Ill. 2d 70, 77, 265 N.E.2d 1, *cert. denied* (1971), 403 U.S. 907, 29 L. Ed. 2d 683, 91 S. Ct. 2213.) Furthermore, when a defendant elects to testify or explain his presence at or near the scene of a crime, or his connection therewith, he must tell a reasonable story or be judged by its improbabilities. *People v. Malmenato* (1958), 14 Ill. 2d 52, 60, 150 N.E.2d 806; see also *People v. Gilbert* (1st Dist. 1978), 58 Ill. App. 3d 387, 374 N.E.2d 739.

■■ The circumstantial evidence presented by the State was sufficient to establish defendant's guilt of the crime of burglary beyond a reasonable doubt. In his own testimony, defendant acknowledged his presence with Ronald Schwartz at the entrance to the jalousie window-enclosed porch at the rear of Mrs. Korenevich's house. The State's evidence, while circumstantial, proves beyond a reasonable doubt that defendant entered the house. If it were true that he attempted to withdraw from the crime, his flight would have been observed by the Messerveys. The record demonstrates no reason to doubt their credibility. Further, had defendant attempted to flee in the manner to which he testified, footprints would have been found in the snow between the porch area and the east side of the house. Officer Vallas testified there were no footprints in the snow at that location. Mrs. Korenevich testified she gave no one permission to enter the house that day. Officer Frost testified that when he knocked on the locked door, he heard two male voices speaking inside the house. Moments after he heard the voices, Frost observed defendant and

Schwartz fleeing from the area of the now open front door. In short, the evidence proved beyond a reasonable doubt that the only way for the defendant to have gone from the back door of the porch to the area outside of the front door was through the house.

The theory of innocence which defendant contends is supported by the evidence is not, in our view, reasonable. It is that defendant, who had injured his ankle in a fall from a ladder the day before, agreed to accompany Ronald Schwartz to Park Ridge to help him pick "something" up. When they arrived at their destination, Schwartz told him to wait in the car. When Schwartz returned, defendant accompanied him as they walked east to the passageway between the Messervey house and the Korenevich house. Although he was able to walk only with a limp, and although there were few cars on the street, defendant did not question Schwartz's choice of a parking place five or six houses to the west of the Korenevich house. Schwartz told him the "guy" had told him to come around to the back door. Only when they reached the back door and Schwartz pulled the "bar" out of his sleeve, did defendant realize what was going on. Defendant, who testified that he had prior convictions for burglary and robbery, among others, then asked what Schwartz was doing. Deciding not to participate in another burglary, defendant determined to flee from the scene using a circuitous route back to the car. He saw the police car approach and decided to walk back toward the house. When Schwartz burst out the front door, telling him to run, defendant panicked and ran. This portion of defendant's theory supposedly accounts for the fact that Officer Frost saw defendant running from the area near the front door. When defendant elected to explain his presence at the scene of the burglary, he agreed to be judged by his story's improbabilities. Defendant elected to testify and to put his version of what occurred before the jury. In view of the strong circumstantial evidence of guilt presented by the State, we believe the jury was justified in rejecting defendant's story.

## IV.

■■ Defendant urges that the trial court erred in refusing to give the jury the second paragraph of IPI Criminal No. 3.02, the pattern jury instruction on the use of circumstantial evidence. IPI Criminal No. 3.02 provides:

> "Circumstantial evidence is the proof of facts or circumstances which give rise to a reasonable inference of other facts which tend to show the guilt or innocence of [the] [a] defendant. Circumstantial evidence should be considered by you together with all the other evidence in the case in arriving at your verdict.
>
> You should not find the defendant guilty unless the facts and

circumstances proved exclude every reasonable theory of innocence."

The committee note to this instruction states: "The second paragraph of the instruction should be given only when the proof is entirely circumstantial." We agree with defendant's argument that the evidence against him was entirely circumstantial. Therefore, the instruction should have been given. However, the committee note is couched in terms limiting the times when it is *permissible* to give the second paragraph and not in terms of stating the times when that paragraph *must* be given. (*People v. Hammers* (4th Dist. 1976), 35 Ill. App. 3d 498, 507, 341 N.E.2d 471.) The failure of the trial court, if it were error, to give the second paragraph of the instruction does not require reversal unless it appears that justice has been denied or that the verdict resulted from such error. *People v. Merkel* (2d Dist. 1974), 23 Ill. App. 3d 298, 302, 319 N.E.2d 77; *Hammers*, 35 Ill. App. 3d 498, 508.

Defendant's brief does not set forth the nature of any prejudice caused by the trial court's refusal to give the second paragraph of the instruction. As the defendant chose to present his own account of what occurred, an account we have concluded is unreasonable, there is no need for the jury or this court to speculate on other possible theories of innocence. The error, if any, could not have contributed to the jury's verdict, and defendant was not prejudiced. We find no reversible error in the court's action. Accord, *Hammers; Merkel; People v. Uselding* (4th Dist. 1976), 39 Ill. App. 3d 677, 350 N.E.2d 283.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS, P. J., and BROWN, J., concur.