THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FRANK GARCIA, Defendant-Appellant.

First District (5th Division)    No. 79-2274

Opinion filed April 10, 1981.—Rehearing denied May 8, 1981.

---

Ralph Ruebner and Barbara Kamm, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Mary Ellen Dienes, and Gael McCaughey-O'Brien, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

After a jury trial, defendant was convicted of the involuntary manslaughter of his 5-month-old son, Mark, and sentenced to a term of four years. On appeal, he contends that: (1) his guilt was not established beyond a reasonable doubt; (2) the trial court erred (a) in the admission of his written statement, (b) in improperly failing to instruct the jury, (c) in permitting testimony concerning his alleged past abuse of Mark, (d) in admitting a "highly inflammatory" photograph of Mark taken after his death; and (3) he was prejudiced by comments of the prosecutor in closing argument.

Defendant moved *in limine* to bar the testimony of Rosario Yncour, the mother of his children, concerning his alleged past abuse of Mark. The

court precluded testimony concerning an incident in which defendant allegedly picked Mark up by the neck and threw him on a couch, but ruled that Yncour could testify to other past acts of abuse.

Yncour then testified at trial that defendant was reading in the living room when she put Mark in his crib about 9:30 p.m. Awakening at about 4 a.m., she saw defendant sitting in the living room with Mark on his lap and she returned Mark to his crib. Later, defendant brought Mark into their bedroom and she once again put him back in his crib. About 8 a.m. Mark refused to take his bottle and Yncour noticed that his lips were hard, cold and purple inside, and that part of his eyeballs were more turned upward to his head. When she said she was going to take the child to the doctor, defendant told her to wait and he blocked the door as she attempted to leave. However, when defendant went into the bedroom, Yncour left the apartment with Mark and walked to a clinic. When she could not get immediate care, she decided to leave, and defendant, who had been waiting outside the clinic, drove them to Norwegian Hospital. Subsequently, Mark was taken to Children's Memorial Hospital where he died later that day. While at Norwegian Hospital, Yncour heard defendant tell a doctor that because Mark was crying he had placed him on the couch and went to sleep next to him. When he awoke, Mark was on the floor. Yncour also testified that two months prior to his death, Mark had been crying and defendant struck him with his fist, and that when the child was 4 months old she found three or four burns on the back of his head which defendant told her accidentally occurred while he was doing some welding. On another occasion Yncour said defendant had kicked the crib, causing Mark to fall out of it.

Dr. Robert R. Moody, chief resident at Children's Memorial Hospital, Kiyo Yoshimira, a hospital social worker supervisor, and John Toenings, a police investigator, testified that defendant told each of them he had fallen asleep on the couch with Mark and, upon awakening, he found the child on the floor. There was additional testimony from Yoshimira that defendant said he slapped Mark in an attempt to revive him; from Dr. Moody that the child had suffered multiple skull fractures which were the result of great blunt force; and from Toenings that the distance between the seat of the couch and the floor was 15 inches and that, after he had made this measurement, he called Dr. William Beamer who told him that it was possible the skull fractures could have resulted from a fall.

Dr. Beamer, a Board certified pathologist who performed the autopsy, testified for the State that the child's death resulted from subdural hemorrhage associated with skull fractures and a laceration of the liver, all of which were due to blunt trauma and were of such severity that they could not have resulted from a fall of 15 inches but rather "from

a height of maybe a story or greater, two stories." On cross-examination, he said that the laceration of the liver could have resulted from the resuscitation and cardio-massage, and that his postmortem examination disclosed no evidence of burns, bruises, white marks or forehead injuries.

Assistant State's Attorney Mary Shropshire testified that defendant read over a court reporter's transcribed copy of her interview with him, made corrections, initialled each page, and then signed it. In this statement, which she read into the record, defendant stated that Mark was alert when he gave him a bottle at approximately 12:30 a.m.; that when he awoke and found Mark on the floor he observed that his lips were blue, his limbs were limp, he could open only one eye, and he was breathing slowly; that although he had wanted a girl when Yncour was pregnant because they already had a boy, he nevertheless loved Mark; that once or twice he bit Mark on the cheeks causing them to turn blue; and that on one or another occasion he picked Mark up by the neck and tossed him on the couch.

Dr. Steven Medgyesy, a pathologist, testified for the defense that from the records of Dr. Beamer and those of the Norwegian and Children's Memorial Hospitals he determined that the cause of death "was blunt injuries to the head with subdural hemorrhage," that, in his opinion, the amount of force causing the skull fractures was minimal to moderate, that a laceration to the liver can occur as a result of cardio-massage and resuscitation, and that although the fractures could not have been caused by a fall of 15 inches he had observed similar injuries from falls of 2 feet.

Dr. Harvey White, a pediatric radiologist, testified for the State in rebuttal that the child's multiple skull fractures could have resulted from a sharp blow with a fist, but it would have required a fall of at least 8 to 10 feet to have caused such injuries.

OPINION

■■ Defendant first contends his guilt was not established beyond a reasonable doubt because the evidence was entirely circumstantial and did not exclude a reasonable hypothesis that death was accidental. Where a conviction is based upon wholly circumstantial evidence, proof beyond a reasonable doubt requires the exclusion of every hypothesis consistent with defendant's innocence. (*People v. Garrett* (1975), 62 Ill. 2d 151, 339 N.E.2d 753; *People v. Frost* (1977), 47 Ill. App. 3d 767, 362 N.E.2d 417.) Thus, our initial inquiry concerns whether the State's case rests solely upon circumstantial evidence.

We note that direct evidence is proof of the existence of a fact in issue without inference or presumption (*People v. Cox* (1979), 71 Ill. App. 3d 850, 389 N.E.2d 1238; *People v. Christiansen* (1969), 118 Ill. App. 2d 51, 254 N.E.2d 156), as in the case of manslaughter where the witness saw the

accused inflict the blow causing death (see 1 S. Gard, Jones on Evidence §1:3, at 3 (6th ed. 1972)). Circumstantial evidence, however, is indirect proof of the principal facts which can be inferred only from one or more circumstances directly established. *People v. Robinson* (1958), 14 Ill. 2d 325, 153 N.E.2d 65.

■■ In the instant case, we find that no direct evidence was presented as to defendant's guilt. The testimony of Yncour and other State witnesses as to statements of defendant established only that defendant was with the child at the time of his injuries and, while there was medical testimony concerning those injuries, no direct evidence was produced as to their cause. Although there are cases in which admissions of an accused constituted direct evidence, they are not controlling here as they concern admissions directly establishing participation in the crime or they constitute direct proof of an element of an offense. (See, *e.g., People v. Panus* (1979), 76 Ill. 2d 263, 391 N.E.2d 376 (witness testified that defendant admitted taking property); *People v. Brown* (1974), 56 Ill. 2d 312, 307 N.E.2d 356, *rev'd on other grounds & remanded* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254 (defendant's written statement indicated he tied up the victim who was then shot by another person); *People v. Ross* (1980), 89 Ill. App. 3d 128, 411 N.E.2d 1187 (witnesses testified that defendant told each of them that he had killed the victims); *People v. King* (1978), 58 Ill. App. 3d 199, 373 N.E.2d 1045 (witness testified in a burglary prosecution that defendant said he waited in the victim's home).) Accordingly, we conclude that the State's case was entirely circumstantial.

■■ We turn then to defendant's position that the testimony of the State's witnesses as to what he said had occurred—that he fell asleep on the couch and when he awoke the child was on the floor—is a reasonable hypothesis of innocence. We initially note that the State is not required to establish guilt beyond the possibility of a doubt (*People v. Branion* (1970), 47 Ill. 2d 70, 265 N.E.2d 1, *cert. denied* (1971), 403 U.S. 907, 29 L. Ed. 2d 683, 91 S. Ct. 2213), and here, we believe, the evidence does not reasonably support the theory of innocence. Officer Toenings testified that the distance in question between the seat of the couch and the floor was 15 inches and, although there was disagreement between the medical witnesses as to the distance a 5-month-old child would have to fall to receive the injuries sustained by Mark, they all stated the distance would have to be from a height greater than 15 inches. More specifically, Dr. Beamer said that a fall from one or two stories would be required, Dr. White stated that it would have to be a fall from at least 8 to 10 feet, and even Dr. Medgyesy, a defense witness, testified that although he had seen similar injuries in falls of less than 2 feet, the fractures sustained by Mark could not have been caused by a 15-inch fall. Moreover, the record does not support defendant's statement that Dr. Beamer told Officer Toenings

that it was possible for Mark's fractures to have resulted from a fall of 15 inches. The colloquy between Officer Toenings and defense counsel, upon which defendant relies, is as follows:

"Q. When you talked to Dr. Beamer, did you ask him whether or not a fall from that height [of the couch] could cause a fracture?
A. No, sir.
* * *

Q. Did he [Dr. Beamer] also tell you that it was possible for those injuries to have been caused by a fall but not probable?
A. Yes, sir."

It is clear that there is nothing in this dialogue which suggests that a fall of 15 inches could have produced Mark's injuries. In the light of the above, we find that defendant's only hypothesis of innocence is unfounded.

■■ Defendant next asserts error in the admission of the alleged prior acts of abuse by defendant. We initially note there is no denial by defendant that evidence of past instances of abusive treatment is relevant to show the mental state of recklessness, an element of involuntary manslaughter. (*People v. Platter* (1980), 89 Ill. App. 3d 803, 412 N.E.2d 181; *People v. Singleton* (1976), 41 Ill. App. 3d 665, 354 N.E.2d 464; see also *People v. Holland* (1973), 11 Ill. App. 3d 591, 297 N.E.2d 310.) Instead, he argues that "these acts of abuse were not proven to have occurred" because Yncour's testimony concerning them was contradicted by Dr. Beamer's testimony that his postmortem examination showed no evidence of burns, bruises, white marks or forehead injuries.

This argument raises questions as to the credibility of Yncour's testimony and the weight and inferences to be drawn therefrom, which is for the determination of the trier of fact (*People v. Zuniga* (1973), 53 Ill. 2d 550, 293 N.E.2d 595), and it is clear that defendant cannot preclude testimony as to his abusive treatment of the child by simply pointing to other testimony which he claims refutes it. (*Platter*; see also *People v. Spaulding* (1923), 309 Ill. 292, 141 N.E. 196.) Rather it was for the jury to weigh Yncour's testimony that the defendant struck the child with his fist, bit him and kicked his crib, as well as her testimony concerning the child's burn marks in the light of Dr. Beamer's testimony that the postmortem examination revealed no external evidence of trauma and defendant's written statement that on prior occasions he had bitten Mark on his cheeks, causing them to turn blue. We conclude that there is no support for defendant's argument that Yncour's testimony concerning defendant's past abusive acts towards Mark should not have been admitted solely on the basis of Dr. Beamer's testimony.

■■ Defendant also argues that because all the evidence against him was circumstantial, the court erred by failing to include in the instructions the second paragraph of the IPI instruction on circumstantial evidence

(Illinois Pattern Jury Instructions, Criminal, No. 3.02 (1968) (hereinafter cited as IPI Criminal No. 3.02)), which provides:

"[Your should not find the defendant guilty unless the facts and circumstances proved exclude every reasonable theory of innocence.]"

The Committee Comments accompanying this instruction state, in part, "[t]he second paragraph [of this instruction] should be given only when the proof of guilty [*sic*] is *entirely* circumstantial." IPI Criminal No. 3.02, Committee Comments, at 21; see also *People v. Molsby* (1978), 66 Ill. App. 3d 647, 383 N.E.2d 1336; *People v. French* (1978), 59 Ill. App. 3d 353, 375 N.E.2d 502.

Having found above that the evidence against defendant was wholly circumstantial, we conclude that the second paragraph of the instruction should have been given. However, the failure to do so does not warrant reversal unless it appears that justice was denied or that the verdict resulted from such error. (*People v. Jones* (1980), 84 Ill. App. 3d 896, 406 N.E.2d 112; *People v. Hammers* (1976), 35 Ill. App. 3d 498, 341 N.E.2d 471, *cert. denied* (1976), 429 U.S. 1002, 50 L. Ed. 2d 614, 97 S. Ct. 534.) Here, the failure to give this part of the instruction does not appear to have denied justice or produced the verdict of guilt since, as concluded above, there was no reasonable theory of innocence consistent with the evidence presented. (See *People v. Zenner* (1979), 78 Ill. App. 3d 40, 396 N.E.2d 1107; *People v. Mickelson* (1975), 32 Ill. App. 3d 813, 336 N.E.2d 806; *People v. Merkel* (1974), 23 Ill. App. 3d 298, 319 N.E.2d 77.) We believe that there was no prejudicial error in the court's action. Accord, *People v. Uselding* (1976), 39 Ill. App. 3d 677, 350 N.E.2d 283; *Hammers*.

■■ Defendant next contends that he was prejudiced by the improper admission of a photograph taken of Mark after his death because it was "highly inflammatory" in that it allegedly showed Mark lying in a bed bleeding and because it was not probative. The admission of photographs is largely within the discretion of the trial judge whose determination will not be interfered with unless there has been an abuse to the prejudice of the defendant. (*People v. Nicholls* (1969), 42 Ill. 2d 91, 245 N.E.2d 771, *cert. denied* (1970), 396 U.S. 1016, 24 L. Ed. 507, 90 S. Ct. 578; *People v. Rolon* (1979), 71 Ill. App. 3d 746, 390 N.E.2d 107.) Here, we cannot determine whether the photograph was inflammatory or whether it otherwise prejudiced defendant as it is not included in the record. Moreover, there is a question whether blood was shown in the photograph. In ruling on the post-trial motion, the trial court indicated some doubt in this regard, stating that if what appeared in the photograph was in fact blood, it was minimal in amount. We find no prejudicial error in the admission of the photograph.

■■ Defendant also maintains that his written statement should not have

been received in evidence because it contained inadmissible matter. First, he complains of a portion of the statement in which he gave his account of the occurrence in question. The parties are in accord that any statement of an accused may be used against him as an admission except as may be excluded by the doctrine of confessions or the privilege against self-incrimination. (*People v. Howell* (1977), 53 Ill. App. 3d 465, 368 N.E.2d 689.) An admission is a statement of independent facts which, when taken in connection with proof of other facts, may lead to an inference of guilt of the crime charged but from which guilt does not necessarily follow. (*People v. Walters* (1979), 69 Ill. App. 3d 906, 387 N.E.2d 1230.) Here, we believe that defendant's version of the incident—he discovered Mark on the floor after he had gone to sleep with the child on the couch—when viewed with Toenings' testimony that the distance between the seat of the couch and the floor was 15 inches, and the opinion of medical witnesses that Mark's injuries could not have resulted from a fall of 15 inches, tends to imply defendant's guilt and, therefore, the portion of the statement in which he gave his account of the occurrence was properly received. In any event, defendant was not prejudiced, because this portion of his statement was exculpatory and merely repeated prior testimony in that regard from Dr. Moody, Yoshimira and Toenings. See *People v. Parra* (1975), 35 Ill. App. 3d 240, 340 N.E.2d 636.

Secondly, defendant complains that other portions of the statement, concerning his desire to have a daughter when Yncour was pregnant with Mark and his discussion with her regarding abortion, should not have been admitted. "The test of admissibility of evidence is whether it fairly tends to prove the particular offense charged and any circumstance may be put in evidence which tends to make the proposition at issue either more or less probable." (*People v. Rodgers* (1972), 53 Ill. 2d 207, 214-15, 290 N.E.2d 251, 255, quoting *People v. Nemke* (1970), 46 Ill. 2d 49, 58, 263 N.E.2d 97, 102, *cert. denied* (1971), 402 U.S. 924, 28 L. Ed. 2d 663, 91 S. Ct. 1387.) Here, we cannot say that defendant's desire to have a daughter is indicative of an intent to harm the child after birth or that the discussion about abortion tended to show that he encouraged Yncour to abort. However, although these portions of the statement were improperly received, they do not appear to have prejudiced defendant as they attribute no ill motive to him. Indeed, when they are considered with the additional remark in the statement that he loved Mark, they appear to negate any predisposition to commit the offense charged. See *People v. Cooper* (1974), 17 Ill. App. 3d 934, 308 N.E.2d 815; *People v. Bleimehl* (1972), 9 Ill. App. 3d 273, 292 N.E.2d 60.

■■ Defendant additionally takes objection to the references in the statement that he had bitten Mark on the cheeks and that he picked him up by the neck and threw him on the couch. As to the biting episodes, we think that any error was harmless in the light of Yncour's testimony as to

the same incidents. (*People v. Williams* (1979), 71 Ill. App. 3d 547, 390 N.E.2d 32.) We believe the court should not have permitted the reference to defendant picking Mark up by the neck in view of its prior finding *in limine* that such testimony would be precluded. However, in light of the strong circumstantial evidence of defendant's guilt, we cannot say that the State's case would have been "significantly less persuasive" had this evidence not been admitted. *People v. Clark* (1979), 71 Ill. App. 3d 381, 404, 389 N.E.2d 911, 931, citing *Schneble v. Florida* (1972), 405 U.S. 427, 432, 31 L. Ed. 2d 340, 345, 92 S. Ct. 1056, 1059-60.

■■ Defendant also challenges a number of remarks made by the prosecutor during closing argument which he contends denied him a fair trial. The first of these concern comments that Yncour's testimony regarding prior incidents of the abuse of Mark by defendant were "uncontradicted" and "unrebutted." He argues they directed attention to his failure to testify.

While the fifth amendment privilege against self-incrimination forbids comment by the prosecution on the accused's failure to take the stand on his own behalf (*Griffin v. California* (1965), 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229; *People v. Vinson* (1978), 61 Ill. App. 3d 684, 378 N.E.2d 348), it is not improper for the prosecutor to refer to the fact that the testimony of a State's witness is uncontradicted, even though defendant is the only person who could have contradicted it (*People v. Hopkins* (1972), 52 Ill. 2d 1, 284 N.E.2d 283; *People v. Mills* (1968), 40 Ill. 2d 4, 237 N.E.2d 697), provided that the comment is not made in a manner " 'intended or calculated to direct the attention of the jury to the defendant's neglect to avail himself of his legal right to testify' " (*People v. Jones* (1970), 47 Ill. 2d 66, 69, 264 N.E.2d 189, 190; *People v. Richard* (1980), 88 Ill. App. 3d 247, 254, 410 N.E.2d 459, 466). In the instant case, it appears that the prosecutor's characterization of Yncour's testimony was a response to defense counsel's reference to this testimony in his argument as "lies," rather than an effort to strengthen the State's case by emphasizing defendant's failure to testify.

Second, defendant complains of the argument by the prosecutor in rebuttal in which he told the jury that Dr. Beamer and Toenings were not liars and that neither he nor they needed to "trump up cases that didn't exist" to keep their jobs. An accused cannot complain of statements made in rebuttal by the prosecutor which were invited by the remarks of defense counsel. (*People v. Vriner* (1978), 74 Ill. 2d 329, 385 N.E.2d 671, *cert. denied* (1979), 442 U.S. 929, 61 L. Ed. 2d 296, 99 S. Ct. 2858; *People v. Wilson* (1980), 87 Ill. App. 3d 693, 409 N.E.2d 344.) Here also, we see the prosecutor's comments as being invited by the defense attorney's remarks in his closing argument insinuating that Beamer, Toenings, and the State's attorneys were plotting against his client.

Third, defendant complains of the prosecutor's remark that defend-

ant was "significantly heavier" at the time of the child's death than at trial, thereby suggesting it was "impossible" for defendant to lie next to him on the couch. We note, however, that defendant made no objection to this comment and thus has waived any error. *People v. Lewis* (1979), 75 Ill. App. 3d 259, 393 N.E.2d 1098; *People v. Travis* (1976), 43 Ill. App. 3d 44, 356 N.E.2d 678.

■■ Fourth, defendant asserts he was prejudiced by the following prosecutorial comment, which he claims is not based upon the evidence: "I suggest * * * that when Dr. Medgyesy came off that stand and was shown these x-rays for the first time, that he was probably shocked." However, in response to defendant's objection to this comment, the court admonished the jury to disregard any argument not based on evidence or inference—thereby curing any possible adverse effect from the statement. *(People v. Nodal* (1980), 89 Ill. App. 3d 538, 411 N.E.2d 1087; see also *People v. Baptist* (1979), 76 Ill. 2d 19, 389 N.E.2d 1200.) In any event, it appears that Dr. Medgyesy did not view X rays of the deceased prior to trial and that in response to a series of questions concerning the extent of the fractures, after he did view the X rays, he said he was "not sure." This testimony, viewed in the light of the testimony of Dr. White, a pediatric radiologist, that the fracture lines disclosed in these X rays were "easily visible to a person in the medical profession," renders the prosecutorial comment an inference reasonably based on the evidence.

■■ Finally, defendant argues that "the prosecutor made several statements intended to arouse the jury's passions." Over objection, the prosecutor appealed to the jurors as "family people" and stated, "There's one very ironic kind of thing in this case, and that is that this is the international year of the child, and * * * this is how the defendant celebrates that year." While every defendant is entitled to a trial free from improper remarks or arguments, a conviction will not be disturbed on appeal unless such comments constituted a material factor in the conviction. *(People v. Clark* (1972), 52 Ill. 2d 374, 288 N.E.2d 363.) Here, the prosecutor's remarks did not constitute such an important factor in the conviction in view of the strong circumstantial evidence establishing his guilt. Moreover, the fact that the jury found defendant guilty of involuntary manslaughter rather than murder—the offense with which he was charged in the indictment—tends to indicate that the jury closely evaluated the evidence rather than having been influenced by the remarks of the prosecutor. *Cf. People v. Taylor* (1977), 53 Ill. App. 3d 810, 368 N.E.2d 950.

For the reasons stated, the judgment is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.